# HEALD, EXECUTOR OF PETERS, *v.* DISTRICT OF COLUMBIA.

### ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 268.   Argued April 13, 1922.—Decided May 15, 1922.

1. The objections that the act of Congress taxing the intangible property of persons resident or engaged in business in the District of Columbia, (c. 160, § 9, 39 Stat. 1046), is unconstitutional because of its alleged application to intangible property, credits, etc., of non-residents and to state and municipal bonds, cannot be raised by persons who are residents and whose property taxed is within the District and does not include such bonds. P. 122.

2. Whether a clause of this act respecting the exemption of the stock of certain companies from the tax is void for uncertainty, *held* not open for decision in a suit where it was not shown that any tax was levied on the basis of it or that it subjected the plaintiff to injury or embarrassment. P. 123.

3. Congress has power to tax residents of the District of Columbia for support of the District Government and to cause the money to be paid into the Treasury of the United States and held, not as a separate fund for the District, but subject to the disposal of Congress, notwithstanding the fact that the persons taxed lack the suffrage and have politically no voice in the expenditure of the money. P. 124.

269 Fed. 1015; 50 App. D. C. 231, affirmed.

ERROR to a judgment of the Court of Appeals of the District of Columbia, affirming a judgment of the Supreme Court of the District for the defendant in an action to recover a tax. See also s. c. *Heald* v. *District of Columbia*, 254 U. S. 20.

*Mr. Vernon E. West*, with whom *Mr. A. S. Worthington* was on the briefs, for plaintiff in error.

The whole act being void, because it unlawfully taxes nonresidents, plaintiffs in error may question its validity. It would be most remarkable if they and others in a similar position must continue to pay taxes under a void statute until the question of its invalidity is raised by a nonresident. Congress clearly intended that the act should operate alike upon residents and nonresidents engaged in business here.

The court below relied upon *Plymouth Coal Co.* v. *Pennsylvania,* 232 U. S. 531, 544; *Jeffrey Mfg. Co.* v. *Blagg,* 235 U. S. 571; and *Arkadelphia Milling Co.* v. *St. Louis S. W. Ry. Co.,* 249 U. S. 134. But each of those cases relates to the constitutionality of state statutes. This court had before it only the question of constitutionality, and not the question of construction. It was not incumbent upon this court to determine whether the whole act must fall if part was void; provided, there was any possible legal construction by which the state court could separate the good from the bad. The reason for the rule applied by this court in regard to state statutes is fully set forth in *Hatch* v. *Reardon,* 204 U. S. 152, 160. *Bowman* v. *Continental Oil Co.,* 256 U. S. 642, though involving a state statute, is peculiarly analogous to the case at bar. See *Oklahoma* v. *Wells, Fargo & Co.,* 223 U. S. 298; *Sully* v. *American National Bank,* 178 U. S. 289.

The law here involved is not a state statute, but an act of Congress relating to the District of Columbia which this court, as well as the courts below, has jurisdiction to

construe.   *Smoot* v. *Heyl,* 227 U. S. 518; 12 Corpus Juris, 764; *State* v. *Bengsch,* 170 Mo. 81; *State* v. *Cumberland Club,* 136 Tenn. 84; *People* v. *McBride,* 234 Ill. 146.

In no case has this court refused to hold an act of Congress void on the ground that the party assailing the act was not affected by it in the particular complained of, except in those cases where the provisions of the act were found to be separable.  *United States* v. *Delaware & Hudson Co.,* 213 U. S. 366, 417; *Employers' Liability Cases,* 207 U. S. 463; *Illinois Central R. R. Co.* v. *McKendree,* 203 U. S. 514; *United States* v. *Reese,* 92 U. S. 214; *Baldwin* v. *Franks,* 120 U. S. 678; *Trade-Mark Cases,* 100 U. S. 82.

The Act of 1917 contains three provisions which are beyond the power of Congress and render the whole act void.   (a) The provision taxing nonresidents on intangible property;  (b) the provision taxing them on their credits not arising out of their business in the District; and (c) the provision taxing state and municipal bonds.

The provisions of the act as to the tax on " shares of stock " are so vague that it is impossible to determine what shares are taxable and what are exempt; so that so much of the act as relates to them is void.   Consequently the whole act falls.

Congress is without power to tax the inhabitants of the District of Columbia or to cause them to be taxed, for local purposes, so long as they are not represented in the taxing body.

It can not be disputed that when the colonies established their independence it was recognized by all of them that not only is taxation without representation tyranny, but that the right to be represented before he can be taxed is a fundamental right, the deprivation of which reduces the injured person or community to a state of slavery.   It was deemed to be as important and fundamental as the right of trial by jury.   It was, in substance,

the same as the right that private property shall not be taken for public use without just compensation.

These have been the rights of Englishmen for a thousand years. The Declaration of Independence discloses that these are among the rights to maintain which our forefathers drew the sword. And these rights existed to their fullest extent in the residents of Montgomery and Prince George's Counties when a part of each of those counties was transferred to the Federal District of the Constitution. They are today the rights of the inhabitants of this District, unless they have been voluntarily surrendered.

In so far as the cession itself is concerned, there is no room for argument. The act of cession passed by the Maryland legislature expressly provided: " That nothing herein contained shall be so construed to vest in the United States any right of property in the soil or to affect the rights of individuals therein, otherwise than the same shall or may be transferred by such individuals to the United States." Tindal's, The City of Washington, 31, 167.

A similar provision was embodied in the Virginia act of cession. Tindal, 32. These acts and the other acts of Virginia and Maryland and the proceedings under which the transfer of the jurisdiction to the United States was completed, are set forth in *Morris* v. *United States,* 174 U. S. 196.

If the residents of the ceded territory lost their right to be represented in any body that imposed taxes on them, they lost it by virtue of some express provision of the Constitution. In the creation of that instrument they were represented by the Virginia and Maryland delegates in the Convention of 1787, and they were represented in the conventions of their respective States when Virginia and Maryland ratified the Constitution.

The express provisions of the Constitution as to taxation are that Congress shall have power to lay and collect

taxes, and uniform duties, imposts and excises, to pay the debts and provide for the common defense and general welfare of the United States throughout the United States; and that no capitation, or other direct, tax, shall be laid, unless in proportion to the census.

We make no question that the people of this District are subject to taxation by Congress under these provisions of the Constitution, as well as under the amendment giving Congress the power to impose an income tax. As to the direct tax provision, it was so held in *Loughborough* v. *Blake,* 5 Wheat. 317. But obviously a different question arises as to taxation for local purposes in the District. That depends upon the proper interpretation of par. 16, § 8, Art. I, of the Constitution, giving Congress power to exercise exclusive legislation over the District and over forts, etc. There seems to be nothing in the recorded proceedings of the Constitutional Convention or in the debates in the Colonial Assemblies when the question of ratifying the Constitution was under discussion that throws any light upon the meaning given by the Convention to the words "exclusive legislation" in this clause of the Constitution. It was adopted without debate. But Madison (Federalist No. XLIII), in explaining the necessity for an independent seat of government, assumes that a State, ceding territory for this purpose, "will no doubt provide in the compact for the rights and the consent of the citizens inhabiting it;" that they "will have had their voice in the election of the government which is to exercise authority over them;" and that "a municipal legislature for local purposes, derived from their own suffrages, will of course be allowed them."

Our claim that the right of Congress to exercise exclusive legislation in this District does not include the power to tax, is sustained by the history of the events which led to the independence of the Colonies and the adoption of the Constitution.

The great contention of the Colonists in their controversy with Parliament over the Stamp Act in 1765–6, was that the Parliament's power to legislate for the Colonies did not include the power of internal taxation—that legislation is one thing, and taxation another.  3 Bancroft's History of the United States (Centenary Ed.) pp. 480, 562; 4 History of Debates and Proceedings of Both Houses of Parliament, pp. 288–291; James Otis, Rights of the British Colonies, 3d ed., 1766, p. 55; 3 Hallam's Constitutional History of England (1861 ed.), pp. 34, 35, 36, 105.  In every history of these pre-revolutionary times in America it is recorded that the Colonists everywhere resisted the efforts of Parliament to tax them on the principle laid down by their champions in Parliament that taxation is not legislation.  When it became evident that the Colonies would resist by force of arms if necessary the enforcement of the Stamp Act, Pitt, in concluding a speech on the subject, advised its repeal, (4 History of Debates and Proceedings in Both Houses of Parliament, p. 297,) which was done, coupled with a resolution declaring that Parliament had the power of legislating for the Colonies in all cases whatsoever.  It matters not that those who favored the Stamp Act still held that the words, "in all cases, whatsoever," included the power of taxation.  It can not be questioned that Pitt's view was the American view on this subject.  It is inconceivable that the people who from 1765 to 1783 were contending for the principle that the power to legislate does not include the power to tax should in 1787 have provided in the constitution they then framed that power to tax without representation should be conferred upon Congress when, as to the proposed federal district, it was given merely the power to legislate.

The contemporaneous construction of the "exclusive legislation" provision of the Constitution, continued for over seventy years, demonstrates that it was not held to

deprive the inhabitants of the District of their right to be represented in any body that should be empowered to tax them.

From the time of the cession till 1871, the inhabitants of the District taxed themselves through their elected representatives, except that in that part of the territory which was not included in the municipal corporations of Washington, Georgetown and Alexandria, they were taxed by what were substantially county commissions composed of justices of the peace appointed by the President. Acts of February 21, 1801, 2 Stat. 103; May 3, 1802, 2 Stat. 193; July 1, 1812, 2 Stat. 771.

From 1871 till 1874, they were taxed by a local legislature, one branch of which was elected by them and the other appointed by the President. Act of February 21, 1871, 16 Stat. 119.

From 1874 till 1878, Congress had under consideration various plans providing for a permanent form of government for the District and meanwhile Congress regulated taxation in the District. Act of June 20, 1874, 17 Stat. 116.

From 1878 till 1920, one-half of the expenses of the District Government were required to be paid out of the revenues of the District produced by laws enacted by Congress and the other one-half by the United States. Act of June 11, 1878, 18 Stat. 102.

Thus, till 1874 the people of the District were fully protected in their right to be represented in the body that taxed them; during the next four years they were waiting for Congress to decide on their form of government; and from that time till 1920 they were amply protected from excessive or unfair taxation by the fact that for every dollar taken from them in taxes the United States was required to appropriate a dollar from its treasury. Acquiescence in such taxation by the inhabitants of the District under these circumstances can not be considered as

binding them to continue to submit when the protection afforded them by the Act of 1878 is withdrawn.

The actual decisions of this court and the courts of the District of Columbia do not uphold the power of Congress to levy local taxes in the District. Distinguishing and explaining: *Loughborough* v. *Blake,* 5 Wheat. 317; *Gibbons* v. *District of Columbia,* 116 U. S. 404; *Welch* v. *Cook,* 97 U. S. 541; *Mattingly* v. *District of Columbia,* 97 U. S. 687; *Cohens* v. *Virginia,* 6 Wheat. 264; *Willard* v. *Presbury,* 14 Wall. 676; *Bauman* v. *Ross,* 167 U. S. 548; *Wilson* v. *Lambert,* 168 U. S. 611; *Parsons* v. *District of Columbia,* 170 U. S. 45.

We are not for a moment claiming that the inhabitants of this District can escape taxation unless they are given representation in Congress. To give us such representation would be the, simplest way out; but it is not the only way. It is not taxation that we oppose but taxation without representation. Nor are we claiming that anything like a state government is essential, or even that municipal powers should be given us again. All that is required to make, taxation legal in the District is that a body of some kind having the power to regulate taxation here shall be created and that we shall be represented in that body.

Even if the inhabitants of the District of Columbia are not protected by the great principle of the Revolution that " taxation without representation is tyranny," the Intangible Tax Law is invalid because under the statutes which were in force when it was enacted, and which are still in force, all money raised by District taxation is required to be paid into the Treasury of the United States to be used, not for local expenses, but as other Treasury funds are used, for the general expenses of the Government of the United States. See *Binns* v. *United States,* 194 U. S. 486.

*Mr. F. H. Stephens* for defendant in error.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

To aid in defraying the expenses of the District of Columbia Congress laid a tax of three-tenths of one per cent. on the value of the intangible property of persons resident, or engaged in business, within the District. Act of March 3, 1917, c. 160, § 9, 39 Stat. 1004, 1046. This tax was assessed upon such property held by Heald and others, as committee of Peters, an insane person. They and their ward were residents of the District; the property was located there; and none of it consisted of municipal bonds or was otherwise of a character exempt by law from taxation. The committee, asserting that the taxing act violated the Federal Constitution, paid the tax under protest, and brought this action in the Supreme Court of the District to recover the amount so paid. Judgment was there entered for the defendant. The case was then taken to the Court of Appeals of the District which sought by certificate to obtain from this court instructions as to the constitutionality of the act. The certificate was dismissed for want of jurisdiction. *Heald* v. *District of Columbia,* 254 U. S. 20. Thereupon the case was heard in the Court of Appeals and it affirmed the judgment of the lower court. 50 App. D. C. 231; 269 Fed. 1015. The case is now here on writ of error. Peters having died, his executors, of whom Heald is the survivor, were substituted as plaintiffs in error.

Plaintiff contends that the act is void (*a*) because it requires every non-resident of the District who engages in business therein to pay a tax on all his intangible property wherever situated or from whatever source derived; (*b*) because it requires a non-resident engaged in business within the District to pay a tax on all his credits or choses in action, whether due from residents or non-residents, including those which have not been reduced to concrete form; (*c*) because it taxes bonds of States and their municipalities. The District insists that such is not the

correct construction of the act, that it has not in fact.been so construed or applied by the taxing officials, and that, even if it had been, the whole act would not thereby be rendered void, as these provisions are clearly severable from the rest of the act.   Compare *Hatch* v. *Reardon,* 204 U. S. 152, 161; *Ratterman* v. *Western Union Telegraph Co.,* 127 U. S. 411; *Texas Co.* v. *Brown,* 258 U. S. 466.   But these objections, even if otherwise well founded, would not entitle plaintiff to challenge the validity of the tax.   The property taxed is located within the District; those who hold it and the owner are residents; and there is no state or municipal bond among the property taxed. It has been repeatedly held that one who would strike down a state statute as violative of the Federal Constitution must show that he is within the class of persons with respect to whom the act is unconstitutional and that the alleged unconstitutional feature injures him.[1]   In no case has it been held that a different rule applies where the statute assailed is an act of Congress; nor has any good reason been suggested why it should be so held.   Compare *United States* v. *Chandler-Dunbar Water Power Co.,* 229 U. S. 53, 73; *Straus* v. *Foxworth,* 231 U. S. 162, 171; *Fairchild* v. *Hughes,* 258 U. S. 126.

Then it is contended that one clause of the act is void, because, in enumerating classes of property exempt from the tax on intangibles, it recites " the shares of stock of business companies which by reason of or in addition to incorporation receive no special franchise or privilege." The argument is that the meaning and application of this clause is so uncertain that the taxpayer is left without a guide in making his return.   We have no occasion to inquire into the meaning or effect of this provision or

---

[1] *Supervisors* v. *Stanley,* 105 U. S. 305, 311; *Hatch* v. *Reardon,* 204 U. S. 152, 160; *Citizens National Bank* v. *Kentucky,* 217 U. S. 443, 453; *Plymouth Coal Co.* v. *Pennsylvania,* 232 U. S. 531, 544; *Thomas Cusack Co.* v. *Chicago,* 242 U. S. 526, 530; *Arkadelphia Milling Co.* v. *St. Louis Southwestern Ry. Co.,* 249 U. S. 134, 149.

whether it is open to the criticism leveled against it; for this plaintiff would likewise not be entitled to raise this objection even if well founded; since it is not shown that any tax was levied on the basis of this clause or that it has subjected plaintiff either to injury or to embarrassment.

Finally it is earnestly contended that the act is void, because it subjects the residents of the District to taxation without representation. Residents of the District lack the suffrage and have politically no voice in the expenditure of the money raised by taxation. Money so raised is paid into the Treasury of the United States, where it is held, not as a separate fund for the District, but subject to the disposal of Congress, like other revenues raised by federal taxation. The objection that the tax is void because of these facts, is fundamental and comprehensive. It is not limited in application to the tax on intangibles, but goes to the validity of all taxation of residents of the District. If sound, it would seem to apply not only to taxes levied upon residents of the District for the support of the government of the District; but also to those taxes which are levied upon them for the support generally of the government of the United States. It is sufficient to say that the objection is not sound. There is no constitutional provision which so limits the power of Congress that taxes can be imposed only upon those who have political representation. And the cases are many in which laws levying taxes for the support of the government of the District have been enforced during the period in which its residents have been without the right of suffrage.[1]

*Affirmed*

---

[1] Compare *Gibbons* v. *District of Columbia*, 116 U. S. 404; *Metropolitan R. R. Co.* v. *District of Columbia*, 132 U. S. 1, 8; *Shoemaker* v. *United States*, 147 U. S. 282; *Bauman* v. *Ross*, 167 U. S. 548; *Wilson* v. *Lambert*, 168 U. S. 611; *Parsons* v. *District of Columbia*, 170 U. S. 45, 50; *District of Columbia* v. *Brooke*, 214 U. S. 138.