UNITED STATES v. WRIGHTWOOD DAIRY CO. (two cases).

Nos. 7619, 7620.

Circuit Court of Appeals, Seventh Circuit.

May 4, 1942.

908

J. Albert Woll, U. S. Atty., and John A. Looby, Jr., Asst. U. S. Atty., both of Chicago, Ill., and John S. L. Yost and Mary Connor Myers, both of Washington, D. C., for the United States.

Alvin E. Stein, Abraham Lepine, and Pines, Stein & Beber, all of Chicago, Ill., for defendant.

Before SPARKS, KERNER, and MINTON, Circuit Judges.

KERNER, Circuit Judge.

Appeal No. 7619 involved an order known as Order No. 41, issued by the Secretary of Agriculture pursuant to the authority conferred upon him by the Agricultural Marketing Agreement Act of 1937, 7 U.S.C.A. § 601 et seq. Appeal No. 7620 challenged the constitutionality of the Act and attacked the validity of the Order.

The Government brought the action under § 608a(6) of the Act to enforce specifically the provisions of Order No. 41 and "to prevent and restrain" the defendant, Wrightwood Dairy Co., from handling milk in violation of the Order. The trial court dismissed the complaint and in accordance with the prayer of defendant's counter-claim directed the issuance of a permanent injunction restraining the Government, its officers, and agents from enforcing Order No. 41 against the defendant. From that decree, both parties appealed: the Government from the dismissal of the complaint and the granting of the defendant's prayer for relief; the Dairy Company from certain findings and rulings of the District Court.

At the October session of the current term, the two appeals were before us. In the appeal of the Government, we affirmed the dismissal of the complaint. That decision, of course, made unnecessary any consideration of the cross-appeal and it was dismissed. 123 F.2d 100. The Supreme Court, on February 2, 1942, 62 S.Ct. 523, 86 L.Ed. ——, held that Congress, by the provisions of § 8c(1), conferred upon the Secretary authority to regulate the handling of intrastate products, which, by reason of its competition with the handling of the interstate milk, so affects that commerce as to interfere substantially with its regulation by Congress; and that the statute so read is a constitutional exercise of the commerce power. The cause was reversed and remanded for further proceedings.

In accordance with that mandate we now consider the cross-appeal of the defendant. The errors it assigned are the District Court's finding that the Secretary of Agriculture issued the Order in full compliance with the law and the striking of the defendant's fourth to eleventh defenses inclusive. On the merits, the validity of the Order and the constitutionality of §§ 8c (18) and 10(c) of the Act are the issues.

The purpose of Order No. 41, and of every such order, is to fix and equalize the minimum prices to be paid "producers" for milk sold to "handlers" and disposed of by the latter in certain forms within a designated area, called the "marketing area." No present purpose would be served in discussing the general procedure used to effect that end for the procedure is adequately set forth in United States v. Rock Royal Cooperative, Inc., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446. Pertinent, however, are those steps which led to the issuance of the Order, for our initial problem is whether the Secretary of Agriculture issued the Order in full compliance with the law.

On June 9, 1939, the Secretary gave notice of a hearing to be held in Chicago on a proposed marketing agreement and order. The notice was given wide publicity; it was published in the Federal Register and copies were mailed to the defendant, as

well as to other milk distributors, producers' associations, and to others who might be interested. Beginning on June 26, the hearing was held in accordance with the notice, many pages of testimony were taken, and numerous exhibits were offered in evidence. August 18, 1939, the Secretary submitted to the industry, for the signatures of handlers, a tentatively approved marketing agreement which differed in certain respects from the proposed agreement that had been before the Chicago hearing. On the following day, he submitted to all the known qualified producers a ballot by which they were to indicate their approval or disapproval of the issuance of an order regulating the handling of milk in the Chicago Marketing area in the same manner as provided in the tentatively approved marketing agreement. The voters in that referendum overwhelmingly favored such an order. April 24, 1939, the Secretary made the determinations required by 8c(9) of the Act and two days later the President approved them. August 28, 1939, the Secretary proclaimed the applicable base period[1] and issued the Order as No. 41, to become effective on September 1, 1939.

The defendant contends that there was no notice of and no hearing on Order No. 41, since there was neither in the case of the tentatively approved marketing agreement and proposed order from which No. 41 stemmed. It bases its argument upon the variances between the proposed agreement before the Chicago Hearing and the tentatively approved agreement and proposed order.

■ The contention rests upon a misunderstanding of the purpose and the requirements of the type of hearing provided for by § 8c(3) of the Act. The object of such a hearing is not only to afford the individuals the opportunity of airing their objections to the proposed scheme of things, but is also to give the administrators the chance of obtaining information which might have been overlooked or otherwise not available to them.

The realities of the situation are clear. In the case of many proposed agreements, hundreds of people may be present at a hearing and every individual would be equally desirous of insuring the maximum protection to his own interests. If the equivalent of court proceedings were granted to each person, or even to groups, the hearing would be unwieldy and not susceptible to a satisfactory conclusion. Obviously, a more workable balance must be struck between administrative efficiency and the protection of individual rights.

■ In Labor Board Proceedings, the test of a hearing is whether the issues are clearly defined. National Labor Relations Board v. Mackay Radio, etc., 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381. A fortiori, in the present case, if the purpose of the hearing was clear and everyone knew of the general considerations, no more was needed. Cf. Morgan v. United States, 304 U.S. 1, 22, 58 S.Ct. 999, 82 L.Ed. 1129.

By no reasonable interpretation does the Act require literal identity between a proposed marketing agreement and an order as issued. To be sure, § 8c(10) [2] refers to "a marketing agreement upon which a hearing has been held," but that is to insure no more than that all those subject to an Order knew of the proposal and that there had been a public hearing on the considerations. If complete identity were required, there would never be an end to hearings; the Secretary could never make changes in the light of the evidence adduced without calling a new hearing.[3] Such is not the law; whether there has been a hearing must be measured in the

---

[1] Under § 8e of the Act, "if the Secretary finds and proclaims that, as to any commodity specified in such marketing agreement or order, the purchasing power during the base period specified for such commodity in section 2 [602] of this title cannot be satisfactorily determined from available statistics of the Department of Agriculture, the base period, for the purposes of such marketing agreement or order, shall be the post-war period, August 1919–July 1929, or all that portion thereof for which the Secretary finds and proclaims that the purchasing power of such commodity can be satis-

factorily determined from available statistics of the Department of Agriculture."

[2] "No order shall be issued under this section unless it regulates the handling of the commodity or product covered thereby in the same manner as, and is made applicable only to persons in the respective classes if industrial or commercial activity specified in, a marketing agreement upon which a hearing has been held. * * *"

[3] § 8c(4) certainly does not contemplate that the Secretary should be so trammeled.

light of its purpose, not in terms of identity.

The defendant calls our attention to the fact that the marketing area in the original proposal was larger than the one subject to the final order. That is so, but it does not mean that there was no hearing on the issued order simply because fewer persons were regulated by it than were originally contemplated. The statute fixes only the maximum applicability of an order by providing that it shall apply only to persons engaged in the same classes of activity as set forth in the proposal; it does not prescribe the minimum number of persons to be regulated.

■ We have examined the other differences between the proposed agreement and the issued order, but they too fail to show that there was no hearing in the proper sense. We conclude that the defendant had a right to be apprised of the facts. That right it was fully accorded, for there was a hearing: it was genuine, not sham and pretense.

■ The defendant next contends that Order No. 41 never became legally effective because the necessary producer approval was at no time properly secured. The argument is based upon the theory that the Secretary failed in two respects to comply with § 8c(9).

The first alleged breach is the Secretary's finding [4] that over 67% of the producers voting in the referendum had approved or favored the Order. The defendant claims that the finding did not satisfy the requirement of § 8c(9) (B) (i) because there was no recital in the Order that it was favored by at least two thirds of the producers who, during a representative period, had been engaged in the production for market of the commodity involved.

It is true that the challenged finding is not in the exact words of the section, but the absence of such parrotry is not fatal. The test is whether the necessary fact of the requisite producer approval exists. The Act requires the approval of two thirds of the producers voting in the referendum, cf. Virginian R. Co. v. System Federation, etc., 300 U.S. 515, 560, 561, 57 S.Ct. 592, 81 L.Ed. 789; that is made clear by § 8c(19) which we must, of course, give effect to in interpreting § 8c(9).

■ The second alleged infirmity is that the Secretary did not invite all the qualified producers to participate in the referendum. It is based upon the exclusion from the referendum of all those who produced milk solely for manufacture into cheese, butter, evaporated milk and other similar products to be sold to consumers in the Chicago marketing area.

The Secretary limited participation in the vote to those producers who were delivering milk to handlers engaged in the marketing of fluid milk in the regulated area. Since only such producers were affected by the Order, they were the only ones entitled to participate in the referendum. The Secretary therefore properly excluded from the vote those producers engaged only in producing milk for processing into butter, cheese, etc.

■ The defendant also contends that the Secretary omitted from the marketing area certain cities and towns in the geographic area and that such was unlawful discriminatory, unreasonable, and contrary to the Act.

The Secretary fixed the limits to include those towns having health standards comparable to the city of Chicago. In the regulation of a commodity such as milk, where its quality and conditions of production when sold for fluid consumption are important factors, competitive and otherwise, it seems clear that the marketing areas should be limited to communities having comparable health standards. The Secretary's determination in so doing was reasonable, and from an administrative view practical, and, in the absence of a showing of a clear abuse of discretion, it is not reviewable.

■ There likewise is no discrimination in that a handler may have to pay more for the milk he sells in the marketing area than for that which he sells outside of it, since his competitors in the regulated area have to pay the same price, and in the area without the Order the handler is in no different position than his competitor in that area. In fact, in Rock Royal case, supra, at page 566 of 307 U.S., at page 1009 of 59 S.Ct., 83 L.Ed. 1446, the Supreme Court, in passing upon a like complaint, said:

"The basis of the complaint is that large dealers and cooperative handlers with extensive gathering and distributing facilities are permitted to purchase milk throughout the milk shed at any price they please, if

---

[4] Set forth in the Order and in the Federal Register.

the milk does not pass through a plant in the marketing area, and sell it at any price they please, provided the sale is outside the limited New York marketing area. By reason of the fact that milk sells for more in New Jersey than in New York, a greater profit is made by the handler. If he so desires, the handler can use this profit to replace losses on New York area sales and still be in a position to pay the uniform price to producers on pool milk. This is said to create a discrimination against the defendants.

"It is possible for the handlers with un-priced milk to use their profits from the profitable extra area trade in the way suggested. It was equally possible for them to do so before the Order. It is a competitive situation which the Order did not create and with which it does not deal. We are of the view that there is no discrimination by reason of this situation."

■ The defendant next stressed the point that the Secretary improperly determined an applicable base period different than the one prescribed in § 2. The statute established the prewar period of August 1909 to July 1914 as the base period for determining the purchasing power of milk to be used in fixing the parity prices in the orders regulating the handling of the commodity. However, § 8e permits the Secretary to use another period if he finds and proclaims that the purchasing power cannot be satisfactorily determined from available statistics in his Department. Pursuant to that section, the Secretary adopted August 1919 to July 1929 as the base period and proclaimed and made his finding in the Federal Register.

We appreciate no force in the defendant's contention that the finding must be made in the Order. The requirements of § 8c(4) do not apply to § 8e. The Supreme Court rejected a similar argument in the Rock Royal case, supra. Although an amended order was there involved, that is not a distinction of substance since § 8c (17) provides specifically that all of the provisions of §§ 8c, 8d, and 8e applicable to orders, shall be applicable to amendments.

■ The defendant also argues that there was no support to the finding that satisfactory statistics for the prewar period were not available in the Department. The Secretary made his finding and proclamations. We believe that his determination is one of discretion and not a judgment which we have a power to question.

■ The next point raised is that the Act is void because it is in conflict with the Federal and the Illinois Antitrust laws. It is unnecessary to discuss such contention at length. It will be enough to say that if a conflict exists, the later federal law would prevail over the earlier, and over any conflicting state legislation.

■ The defendant challenges the validity of §§ 8c(18) and 10c on the ground that these sections delegate to the Secretary legislative powers. We believe that a somewhat similar contention was made in the Rock Royal case, supra, and decided adversely. However that may be, the record in the instant case does not disclose any particular action taken under either of these sections, nor that any orders or regulations issued under them have been in any way prejudicial to the defendant. Under such circumstances the defendant is not entitled to challenge the validity of the Act. Heald v. District of Columbia, 259 U.S. 114, 123, 42 S.Ct. 434, 66 L.Ed. 852 and Premier-Pabst Co. v. Grosscup, 298 U.S. 226, 56 S.Ct. 754, 80 L.Ed. 1155.

■ Finally, it is suggested that the case is moot because, after the filing of the complaint, original Order No. 41 was repealed by Amended Order No. 41. The case is not moot. The original Order was in effect retained, since the amendment merely brought it up to date and preserved a harmonious text. Posadas v. National City Bank, 296 U.S. 497, 506, 56 S.Ct. 349, 80 L.Ed. 351.

The judgment of the District Court in No. 7620 will be affirmed, and in No. 7619 it will be reversed and the cause remanded for further proceedings in conformity to the opinion of the Supreme Court.