Sandra KUCK et al., Plaintiffs,

v.

BERKEY PHOTO, INC., Berkey Market-
ing Companies, Defendant.

No. 78 Civ. 3788.

United States District Court,
S. D. New York.

Dec. 11, 1979.

Janice Goodman, New York City, for
plaintiffs.

Benetar, Isaacs, Bernstein & Schair, New
York City, for defendant; Kenneth D.
Stein, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiffs, seven named women suing on behalf of themselves and as representatives of non-union female employees[1] at the Woodside, New York plant of Berkey Marketing Companies, a division of Berkey Photo, Inc. ("Berkey"), allege employment discrimination in violation of Title VII of the Civil Rights Act of 1964.[2] Plaintiffs allege that Berkey followed a policy and practice of discrimination against women on the basis of sex. Specifically, the complaint charges Berkey with three broad categories of violation, in that it:

(1) followed a policy of limiting the work week of the entire class of female employees to 37½ hours, while permitting similarly situated males to work a 40-hour week, thereby depriving the plaintiffs of 2½ hours of work per week and denying them the additional pay they would have received for that period;

(2) discriminated against the named plaintiffs by failing to hire them for or promote them to more prestigious managerial positions, even though they were qualified to hold those positions; and

(3) retaliated against the named plaintiffs after they had complained about defendant's practices before the United States Equal Employment Opportunity Commission ("EEOC")[3] and the New York City Commission on Human Rights.[4]

Presently before the Court is the plaintiffs' motion for summary judgment with respect to the first cause of action. It is not disputed that some time in the mid-1960s Berkey instituted a policy, that it continued to follow until May 31, 1976, of limiting the work week of non-union female employees to 37½ hours, while requiring all male employees to work 40 hours per week. The defendant asserts that the purpose of the policy was to enable the women to have an extra half-hour at home in the morning to get children off to school and for similar related reasons.[5]

On June 1, 1976, Berkey changed its policy and equalized the working week of all employees, male and female, union and non-union, at 40 hours per week. In so doing, it raised the total weekly take-home pay, based upon a 40 hour work week, of both male and female non-union workers. The women received their hourly pay for the additional 2½ hours worked per week; whereas the men, who continued to work 40 hours per week after the policy change, received an increased hourly rate of pay.

The plaintiffs claim that the original and the changed policies had the effect of discriminating against them as a class in several respects. The principal contention is that because during the period prior to June 1, 1976, all non-union employees were paid wages at a specified hourly rate, the female employees were denied, solely on the basis of their sex, the opportunity to earn wages for the additional 2½ hour period per week that their male counterparts were permitted to work. In addition, they allege that this disparate treatment caused another, more subtle injury: because the plaintiffs worked fewer hours per week than did their male counterparts, their supervisors were less likely to view them as fully-committed,

---

1. This Court granted plaintiffs' motion for class certification in *Kuck v. Berkey Photo, Inc.*, 81 F.R.D. 736 (S.D.N.Y.1979). The class was defined to include:

   "All female, hourly paid non-union employees employed by Berkey Photo, Inc., Berkey Marketing Co., Division at the Woodside, Long Island facility on or after September 27, 1975."

   *Id.* at 739.

2. 42 U.S.C. § 2000e et seq. (1974) (as amended).

3. The EEOC has filed a brief as amicus curiae supporting plaintiffs' motion in which it urges the Court to grant summary judgment in favor of the plaintiffs.

4. The plaintiffs originally requested relief from the Commission, which made a finding that probable cause existed to believe that defendant's employment practices were discriminatory. The Commission's findings and report are not binding upon the Court. *See Kuck v. Berkey Photo, Inc.*, 81 F.R.D. 736, 739 & nn.3, 4 (S.D.N.Y.1979) (citing cases).

5. Deposition of Charles Schneck, at 127.

"serious" employees, and thus, were less likely to recommend them for promotion or advancement. Finally, the plaintiffs allege that Berkey's policy change after June 1, 1976 was also discriminatory, in that it accorded salary increases to men who continued to work a 40–hour week, whereas women were given increases intended to cover only the additional hours they were required to work—in sum, the plaintiffs' argument is that although the women and men were working 40 hours per week at the same jobs, the men were getting a higher income.

The defendant disputes these allegations as well as the factual premises upon which they rest. It claims that the pre-1976 policy not only did not discriminate against women, but that it accorded them a gratuitous benefit. The heart of the defendant's argument is that although the company records reflect the wages of employees in hourly rates, in fact all employees, male and female, having comparable qualifications for and working in a particular position received the same weekly salaries. The essence of the defendant's position is that such employees were paid on a weekly and not an hourly basis and received the same salary except that the women worked 2½ hours per week less than the men. In support of this contention, the defendant relies upon testimony given upon a deposition by a former personnel director of Berkey.

According to the defendant, the disparate hours policy was ultimately abandoned on May 31, 1976 because, among other reasons, it effected discrimination against men. As one of the defendant's witnesses expressed it, "[I]t was not fair to make the men work longer for the same amount of money than the women." [6] The defendant contends that, even assuming as the women argue, wages were paid on an hourly rate, they were compensated at a higher hourly rate than their male counterparts. According to the defendant, male employees were required to work 2½ hours more than women for the same amount of money,[7] with the result that men and women in comparable positions received the same total salary at the end of each work week.[8]

Furthermore, the defendant flatly denies that its disparate hours policy in any way hampered the plaintiffs' chances for advancement. On the other hand, plaintiffs' categorical assertion to the contrary in the moving affidavit is not supported by any specific instances of alleged discrimination. Obviously, the parties' general allegations and denials on this issue raise factual questions that may only be resolved at trial.

Finally, the defendant rejects the notion that the salary increases of June 1, 1976 granted to the men either were intended to discriminate against women, or had a discriminatory impact. Berkey advances several assertedly valid reasons for its decision to equalize the working week of all employees at 40 hours per week, including: the belief that the disparate hours policy unlawfully discriminated against men; the desire to increase the productivity of non-exempt women by adding hours to their work week (rather than subtracting hours from the work week of their male counterparts); and the fear of generating resentment among union members, some of whom were women and all of whom worked 40 hour

6. Froelich Deposition, at 14.

7. See, e. g., Defendant's Answer to Interrogatory # 34:
"For example, if a position paying $100 a week were to be filled during that period, a female hired for that position would be permitted to work from 9:00 a.m. to 5:00 p.m. (equivalent to an hourly rate of $2.66) while a male hired for the same job would work from 8:30 a.m. to 5:00 p.m. (an hourly rate of $2.50)."

8. According to the defendant, a female employee who worked a 40-hour week would be compensated at the "straight-time rate" (computed as the quotient of her total weekly salary divided by 37½) for each of the 2½ hours needed to reach a total of 40 hours. Both men and women would be compensated at the overtime rate (1½ times the normal rate) for any hours beyond 40. Thus, whenever a woman worked more than her normal hours, she necessarily received a total salary *higher* than that given to her male counterparts who worked comparable hours. See Deposition of Charles Schneck, at 155.

weeks, if the hours of the non-union personnel were further abbreviated.

More importantly, the defendant contends that the salary change had no discriminatory impact upon the women at all: comparable males and females assigned comparable duties earned identical weekly salaries under the old policy, and identical adjusted salaries under the new policy. Even their hourly rates of pay, which Berkey claims were essentially irrelevant to the computation of their wages, were equalized after June 1. Berkey admits that on June 1 all male employees were given a salary adjustment but it claims that this was done in order to maintain parity in the weekly salaries of males and females.

■ It is apparent that every important factual issue in the case is in dispute, and the conflicting contentions of each party are supported by affidavits, deposition testimony, and company records. Among other issues, the parties fail to agree on whether employees were paid hourly or weekly wages; whether the "regular work week" for Berkey employees prior to June 1, 1976 consisted of 40 hours of work per week, or whether the 37½ hours of work in a woman's week constituted a "regular work week"; whether Berkey followed any objective criteria in hiring personnel; whether employees comparable in all respects other than sex in fact received equivalent salaries; and whether the salary increases given to men were motivated by discriminatory intent or were based upon legitimate business concerns. Indeed, even the parties' expert witnesses, who purportedly subjected the same employment data to the same statistical analysis, reached markedly different results. In short, granting summary judgment on this record is foreclosed under the Rule.[9]

Finally, plaintiffs have raised and amicus has echoed the argument that the mere existence of a policy of disparate treatment—first with respect to hours, and then salary increases—is itself a violation of Title VII. In essence, plaintiffs claim that under any version of the facts, Berkey's policy amounts to a per se violation of the statute. Even assuming the truth of this broad proposition, it does not follow that the plaintiffs are entitled to a recovery of damages. Indeed, they ignore the fact that, if Berkey's factual assertions are correct, plaintiffs were the beneficiaries, rather than the victims of discriminatory policies.

None of the cases cited by plaintiffs or by amicus offers even infinitesimal support for the assertion that a Title VII plaintiff can prevail without first proving injury. In fact, in each of the cases the court awarded relief only after plaintiffs had established that disparate treatment had harmed their interests in some tangible, recognizable way. Plaintiffs principally rely upon *City of Los Angeles v. Manhart*[10] and *Schaeffer v. San Diego Yellow Cabs, Inc.*[11]; both cases well illustrate the poverty of plaintiffs' argument.

In *Manhart* the plaintiff-class of women received a smaller salary than did their male counterparts solely because the actuarial tables, upon which pension deductions were based, predicted greater longevity for women than for men. In *Manhart* the injury was tangible and immediate—the smaller weekly paychecks. Although it was pos-

---

**9.** Summary judgment is to be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." F.R. Civ.P. 56(c). *See Securities Exchange Commission v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978); *Jaroslawicz v. Seedman*, 528 F.2d 727, 731 (2d Cir. 1975); *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975).

The lodestar opinion in this Circuit is still Judge Frank's in *Arnstein v. Porter*, 154 F.2d 464 (2d Cir. 1946). There the court held that

"where . . . credibility, including that of the defendant, is crucial, summary judgment becomes improper and a trial indispensable." *Id.* at 471. Summary judgment is appropriate only where the moving papers demonstrate "*beyond possible question* that the facts [are] not actually in dispute." *Id.* at 474. (emphasis supplied).

**10.** 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978).

**11.** 462 F.2d 1002 (9th Cir. 1972).

sible to argue that the detriment ultimately would be offset by pension payments over a longer period to women during retirement, any single individual's hope of receiving those benefits was at best speculative.

In *Schaeffer* the court invalidated the eight-hour ceiling placed upon the workday of the female taxi drivers whose male counterparts were permitted to work nine hours each day. In that case it was obvious, both from the nature of a cab driver's work and from the fact that the plaintiffs demanded and ultimately obtained back pay, that a restriction on working hours constituted a restriction on pay. In short, the plaintiffs suffered some tangible injury that the court sought to redress.

■ Recently the Supreme Court has stated that proof of injury is an element of a Title VII claim: to prevail a litigant "must show that [s]he was a potential victim of unlawful discrimination."[12] Indeed the absence of a showing of "injury in fact" to the plaintiff has generally been held to bar all judicial intervention in a case under Article III.[13] We intimate no view on whether plaintiffs may at the trial demonstrate the requisite injury to sustain their claim. We only hold at this stage that the mere existence of a policy of disparate treatment without proof of the requisite injury to the plaintiff-class is an insufficient basis upon which to grant summary judgment.

■ Finally, we note that even if Berkey's defense constitutes an admission of liability with respect to its male employees, these female plaintiffs have no standing to raise that issue on behalf of their male counterparts, who are not parties to this litigation. It has long been held, as a general rule, that a person does not have standing to assert the rights of third parties.[14] Although certain exceptions have gradually been engrafted upon that rule,[15] none is broad enough to cover the situation in which a party seeks to assert the rights of others, not before the Court, whose interests are decidedly adverse to its own. If Berkey's policies did discriminate against the male employees, these plaintiffs may not seek a remedy on their behalf.

The plaintiffs' motion for summary judgment is denied.

---

**12.** *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 367, 97 S.Ct. 1843, 1871, 52 L.Ed.2d 396 (1977).

**13.** *See Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Warth v. Seldin*, 495 F.2d 1187 (2d Cir. 1974), *aff'd*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Evans v. Lynn*, 537 F.2d 571 (2d Cir. 1976), *cert. denied*, 429 U.S. 1066, 97 S.Ct. 797, 50 L.Ed.2d 784 (1977).

**14.** *Barrows v. Jackson*, 346 U.S. 249, 255–57, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953); *Tileston v. Ullman*, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943); *Heald v. District of Columbia*, 259 U.S. 114, 123, 42 S.Ct. 434, 66 L.Ed. 852 (1922).

**15.** *See, e. g., Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (physician can assert rights of his patients); *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (parochial school can assert rights of students and their parents); *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) (organization can assert the rights of its members). *See also Flast v. Cohen*, 392 U.S. 83, 99 n.20, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1967) (citing cases). None of the situations involved in these cases is even remotely similar to the one at bar.