**Paul Ervin KISER**

v.

**Donald E. JOHNSON, Admin. of Veterans Affairs, United States of America.**

**No. 74–649 Civil.**

United States District Court,
M. D. Pennsylvania.

May 30, 1975.

LeRoy E. Euvrard, Jr., Smith & Mc-Cleary, York, Pa., for plaintiff.

S. John Cottone, U. S. Atty., Scranton, Pa., Paul J. Killion, Asst. U. S. Atty., Harrisburg, Pa., for defendant.

MEMORANDUM AND ORDER

NEALON, District Judge.

Plaintiff is a World War II (WW II) veteran who in 1945 received a bad conduct discharge following his trial to a general court-martial on a charge of being absent without leave. The complaint alleges that he is in need of medical care as a result of rheumatoid arthritis, a condition which he either contracted or aggravated while on active duty during WW II, and which has caused him to lose the use of both arms and legs; that the Veterans Administration (VA) has denied him all medical benefits because of the type of court-martial to which he was tried (a general, as opposed to a special, court-martial);[1] that this action of the VA is pursuant to 38 U.S.C. § 3103 (1970), which provides in pertinent part, "The discharge or dismissal by reason of the sentence of a general court-martial of any person from the Armed Forces .. . . shall bar all rights of such person under laws administered by the Veterans' Administration based upon the period of service from which discharged or dismissed";[2] and that such a classification, based upon the nature of the court-martial which ordered the plaintiff's discharge, violates the Fifth Amendment's guarantee of equal protection.[3] Plaintiff seeks a

---

1. Plaintiff's argument is that the military's decision whether to try someone before a special or a general court-martial is largely discretionary, and has little to do with the nature of the offense charged; that in cases involving the offense for which he was tried before a general court-martial, absence without leave, that discretion has usually been exercised in favor of convening a special court-martial; and that, under these circumstances, a distinction determining entitlement to veterans' benefits which rests solely on the type of court-martial before which plaintiff was tried is not rationally related to a permissible legislative purpose and violates the Equal Protection clause.

2. It should be pointed out that plaintiff is challenging the statute which precludes the VA from awarding him benefits because of the nature of his discharge, and is not seeking to challenge the power of the military to convene a general, as opposed to a special, court-martial to try the offense with which he was charged. In other words, he does not dispute the punishment meted out to him by the Navy (discharge by a general court-martial), but argues that because of the arbitrary and discretionary manner in which general courts-martial are convened, the statute which denies benefits to any veteran who has been discharged by a general court-martial is unconstitutional. In short, the action of the military is not under attack here; the action of Congress and the VA is.

3. " '[W]hile the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is "so unjustifiable as to be violative of due process." ' (citations omitted) . . . This Court's approach to Fifth Amendment equal protection has always

declaration that Section 3103 is unconstitutional, and an order in the nature of mandamus compelling defendant to pay him $10,000 in benefits which he alleges were wrongfully and improperly withheld since 1949.[4] Presently pending are the defendant's motion to dismiss and cross motions for summary judgment.

A fairly substantial record has already been compiled by virtue of the parties' submission of documents and affidavits in support of their motions, and, on the basis of that record, the following facts appear. Plaintiff served on active duty in the United States Navy for a period of almost one and one-half years during WW II, during which time he pleaded guilty on three occasions to a charge of being absent without leave. On the first occasion, he was tried before a deck court-martial, and on the second before a summary court-martial. The third occasion was on April 24, 1945, when he pleaded before a general court-martial.[5] On this last occasion he was sentenced to reduction to Apprentice Seaman, confinement for a period of three and one-half years and discharge with a bad conduct discharge. On April 26, 1945, however, the convening authority reduced his period of imprisonment to eighteen months and authorized the suspension of his bad conduct discharge if he successfully completed eleven months of confinement.

Subsequently, according to a psychiatric report dated October 31, 1945, plaintiff was found participating in homosexual acts at his place of confinement and, as a result, his good time was revoked and he was referred to the United States Navy Disciplinary Barracks at Hart's Island, New York, New York. There a psychiatric examiner recommended that because of his homosexual tendencies, plaintiff be separated from military service by the most expedient means at hand. Plaintiff not having successfully completed the period of confinement, the discharge portion of the general court-martial's sentence of April 24, 1945 was executed and he was given a bad conduct discharge on January 4, 1946.

Thereafter, in April, 1949, plaintiff filed a claim with the VA for disability benefits and also applied for hospitalization benefits. In May, 1949, he received notice that both applications had been denied because of the character of his discharge from military service. A VA intra-office memorandum dated May 3, 1949 indicated that the determination of plaintiff's ineligibility to receive veterans' benefits was made pursuant to a VA regulation which provided that a person discharged because of homosexual acts or tendencies was generally considered to be ineligible for veterans' benefits.[6]

---

been precisely the same as to equal protection claims under the Fourteenth Amendment." *Weinberger v. Wiesenfeld*, 420 U.S. 636, 95 S.Ct. 1225, 1228, 43 L.Ed.2d 514 (1975) (opinion filed March 19, 1975).

4. In view of the determination that this Court does not have jurisdiction of this suit, *see 'infra*, it is not necessary to determine whether the nature of plaintiff's complaint would require the convening of a Three-Judge District Court pursuant to 28 U.S.C. § 2282. *Cf. Gonzalez v. Automatic Employees Credit Union*, 419 U.S. 90, 100, 95 S.Ct. 289, 42 L.Ed.2d 249 (1974).

5. In 1945, as at the present time, there were three types of court-martial in effect—the deck court (now called summary court), sum-

mary court (now called special court) and general court. The three courts have concurrent jurisdiction over most offenses, the primary distinctions among the three being the number and rank of the officers comprising the court and the severity of the sentence which the court can impose.

6. "(D) An undesirable or blue discharge issued because of homosexual acts or tendencies generally will be considered as under dishonorable conditions and a bar to entitlement under Public No. 2, 73d Congress, as amended, and Public No. 346, 78th Congress. However, the facts in a particular case may warrant a different conclusion, in which event the case should be submitted to central office for the attention and consideration of the director of the service concerned."

In April, 1949, plaintiff also appealed to the Navy Department's Board of Review in an effort to overturn the decision of the general court-martial. That board informed him that it was not authorized to review a discharge by reason of the sentence of a general court-martial, but advised him that it had referred his appeal to the Board for the Correction of Naval Records, which was the proper forum for his appeal. In August, 1949, the latter board informed the plaintiff that it had decided to make no change, correction or modification of his discharge.

The record discloses that the next action taken by plaintiff was in March, 1974, when his attorney wrote the VA in an effort to secure benefits for him. When that effort proved futile, this suit was filed on August 6, 1974.

38 C.F.R. § 2.1064(D) (1946). On November 27, 1948 this regulation was revised as 38 C.F.R. § 3.64, but subsection (D) remained essentially the same. The present version of the regulation, 38 C.F.R. § 3.12 (d)(5) (1963), was published on January 4, 1963.

Plaintiff disputes the defendant's contention that the denial of benefits was pursuant to the regulation barring the award of benefits to persons discharged because of homosexuality, and argues that the denial was pursuant to 38 U.S.C. § 3103. However, in support of his assertion he only offers the general statements in his brief that the denial was pursuant to 38 U.S.C. § 3103 and that at no time prior to the institution of this suit was plaintiff or his attorneys informed that the denial was because of alleged homosexuality. There is nothing in the record to controvert the following statement in the VA intra-office memorandum dated May 3, 1949 dealing with plaintiff's application for benefits: "A determination has been made that the veteran's case comes within the purview of R & PR 1064D." The cited regulation is the same regulation set out *supra* in this footnote. Under these circumstances I can only conclude that the denial was pursuant to the regulation dealing with discharge because of homosexuality and not 38 U.S.C. § 3103. The record does confirm plaintiff's assertion in his brief that at no time was he informed that the denial of benefits was because of alleged homosexuality. However, the record also discloses that at no time was plaintiff informed that the denial of disability

Defendant asserts four grounds in support of his motions. The first two stem from the factual contention that plaintiff was not denied benefits pursuant to 38 U.S.C. § 3103, the statute under attack here, but instead pursuant to 38 U.S.C. § 101(2). As a result, defendant argues, (1) this Court is without jurisdiction, by virtue of 38 U.S.C. § 211(a),[7] to review the decision to deny plaintiff benefits, and (2) plaintiff lacks standing to challenge the constitutionality of Section 3103. In addition, defendant contends (3) that this suit should be barred by the doctrine of laches, and (4) that plaintiff has failed to state a claim upon which relief can be granted. The arguments will be addressed *seriatim*.

### 1. *Section 211(a)*

Defendant argues that 38 U.S.C. § 211(a) divests this Court of jurisdiction

or hospitalization benefits was because of the type of court-martial to which he was tried. For example, two letters sent by the VA in May, 1949 informing the plaintiff that his application for benefits had been denied state only that he is not entitled to any benefits because of "the character of your discharge." It may be argued that such a general phrase could refer to either a discharge because of the sentence of a general court-martial or a discharge because of homosexuality. However, in view of the above-described intra-office memorandum, the phrase "character of your discharge" must refer to the fact that plaintiff's alleged homosexuality precipitated his discharge. One can only speculate as to why the VA was not more specific when it informed plaintiff of the basis for the denial of his benefits. One not unreasonable guess would be that the VA was reluctant to emphasize the fact that denial of benefits was because of homosexuality and hence that whenever a denial was for that reason, the VA simply informed the veteran that it was because of the character of his discharge.

7. "On and after October 17, 1940 . . . the decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise." 38 U.S.C. § 211(a).

to review his 1949 decision denying plaintiff benefits, and that, therefore, this suit must be dismissed. The Supreme Court has recently had occasion to construe Section 211(a). *See Johnson v. Robison*, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974). That case was a suit by a conscientious objector challenging the constitutionality of veterans' benefits legislation limiting eligibility for veterans' educational benefits to persons who had served in the Armed Forces. In the course of rejecting defendant's contention that Section 211(a) precluded federal jurisdiction of the suit, the Court stated:

"Plainly, no explicit provision of § 211(a) bars judicial consideration of appellee's constitutional claims. That section provides that 'the *decisions* of the Administrator on any question of law or fact *under* any law administered by the Veterans' Administration providing benefits for veterans . . . shall be final and conclusive and no . . . court of the United States shall have power or jurisdiction to review any such decision . . .' (Emphasis added.) The prohibitions would appear to be aimed at review only of those decisions of law or fact that arise in the *administration* by the Veterans' Administration of a *statute* providing benefits for veterans. A decision of law or fact 'under' a statute is made by the Administrator in the interpretation or application of a particular provision of the statute to a particular set of facts. Appellee's constitutional challenge is not to any such decision of the *Administrator*, but rather to a decision of *Congress* to create a statutory class entitled to benefits that does not include I-O conscientious objectors who performed alternative civilian service. Thus, as the District Court stated: 'The questions of law presented in these proceedings arise under the Constitution, not under the statute whose validity is challenged.' 352 F.Supp. [848], at 853."

415 U.S., at 367, 94 S.Ct. at 1165.

■ Applying the Supreme Court's construction of Section 211(a) to the instant case, it seems clear that the 1949 decision of the Veterans' Administrator is within the purview of that statute. That decision was that the defendant's discharge because of homosexuality was "dishonorable" for the purposes of 38 U.S.C. § 101(2), the statute which provides generally that the class of former servicepeople who will be eligible for veterans' benefits are those who have been discharged "under conditions other than dishonorable." [8] It was, thus, a decision "under" Section 101(2) in which the Veterans' Administrator, through his own regulation, applied the statutory term "dishonorable" to the particular set of facts raised by defendant's case, and decided that the defendant's discharge was dishonorable for the purposes of Section 101(2). As such, it is precluded from federal judicial review by Section 211(a), and this Court has no jurisdiction to question the 1949 decision to deny plaintiff benefits. Accordingly, Section 211(a) requires that

8. 38 U.S.C. § 101(2) defines the term "veteran" for the purpose of specifying which class of former servicepeople will be eligible for veterans' benefits. It provides:

"(2) The term 'veteran' means a person who served in the active military, naval, or air service, and who was discharged or released therefrom under conditions other than dishonorable." 38 U.S.C. § 101(2) (1970).

The predecessor of this statute, which was in effect at the time that plaintiff was denied disability and hospitalization benefits in 1949, was essentially the same as the present version. The predecessor version was contained in section 1503 of the Act of June 22, 1944, ch. 268, 58 Stat. 301. Both the predecessor and present statutes have been implemented by regulations promulgated pursuant to the rule-making authority of the Administrator of Veterans' Affairs, 38 U.S.C. § 210. Among the types of discharge which VA regulations have consistently identified as generally being "dishonorable" for the purpose of determining eligibility for veterans' benefits has been a discharge because of homosexual acts or tendencies. See footnote 6, *supra.*

the portion of the complaint seeking damages and an order of mandamus be dismissed.

■ Section 211(a), however, does not apply to the portion of the complaint challenging 38 U.S.C. § 3103 and seeking a declaration that that statute is unconstitutional. Section 3103 expressly provides that the "discharge or dismissal by reason of the sentence of a general court-martial of any person from the Armed Forces . . . shall bar all rights of such person under laws administered by the Veterans' Administration . . ." It is thus a decision of *Congress,* not the Veterans' Administrator, to create a statutory class of persons not entitled to veterans' benefits. Like the Congressional decision in *Johnson v. Robison, supra,* to create a class of persons entitled to benefits that does not include conscientious objectors, it is not precluded from review by Section 211(a). Hence, there is no statutory bar to federal jurisdiction of the request for a declaratory judgment in this case.

### 2. *Standing and Ripeness*

Defendant argues that even though plaintiff may also be ineligible for veterans' benefits because of 38 U.S.C. § 3103, in that he was discharged by reason of the sentence of a general court-martial, the actual ground on which he was denied disability and hospitalization benefits when he applied for them in 1949 was the VA regulation which provided that a discharge because of homosexual acts or tendencies "generally will be considered as under dishonorable conditions and a bar to . . . (veterans' benefits)." 38 C.F.R. § 2.1064(D) (1946). For that reason, defendant contends, plaintiff lacks standing to challenge the constitutionality of Section 3103, as that statute is not the enactment from which his injury has resulted.

■ Recent Supreme Court decisions have established a two-fold test for determining whether a plaintiff has standing to challenge administrative action.

First, he must satisfy the jurisdictional requirement of "injury in fact" imposed by the case or controversy clause of Article III of the Constitution. *Association of Data Processing Organizations v. Camp,* 397 U.S. 150, 152, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Second, he must demonstrate that the interest he seeks to protect is "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Id.,* at 153, 90 S.Ct. at 830. It seems clear that plaintiff satisfies the second phase of the test, inasmuch as he is invoking the Due Process clause of the Fifth Amendment, and, indeed, defendant does not contend otherwise. Instead, he asserts that plaintiff does not satisfy the injury in fact requirement. Arguing that to satisfy this requirement, a person challenging the constitutionality of a statute "must show that he is within the class of persons with respect to whom the act is unconstitutional and that the alleged unconstitutional feature injures him[,]" *Heald v. District of Columbia,* 259 U.S. 114, 123, 42 S.Ct. 434, 435, 66 L.Ed. 852 (1922), defendant maintains that Section 3103 cannot be deemed to have injured this plaintiff, inasmuch as that statute was not the ground of the 1949 denial of benefits. While defendant is correct in arguing that the basis of that denial forms a jurisdictional barrier to this lawsuit, *see infra,* that barrier is not a lack of standing on the part of plaintiff to challenge Section 3103.

■ An analysis of plaintiff's relationship to Section 3103 establishes that he satisfies the injury in fact requirement with respect to his challenge to that statute. To begin with, it does appear to be true that the VA's 1949 decision to deny plaintiff benefits was because of his homosexuality and not because of the grade of the court-martial that discharged him. *See* fn. 6, *supra.* Technically speaking, therefore, the 1949 decision was pursuant to Section 101(2) and not Section 3103. Nevertheless, the fact remains that plaintiff was dis-

charged "by reason of the sentence of a general court-martial," and thus, under the express language of Section 3103, has been ineligible ever since his discharge to receive veterans' benefits because of Section 3103. If the statute is constitutionally defective in the manner he contends, he would be "within the class of persons with respect to whom the act is unconstitutional." Furthermore, the alleged unconstitutional feature of the statute has injured the plaintiff. Simply because the VA did not expressly refer to Section 3103 when it denied him benefits in 1949 does not alter the facts that the statute was an absolute bar to plaintiff's receipt of benefits in 1949, and bars his receipt of them now. If he were to obtain a determination that the ground of the 1949 denial of benefits was unconstitutional,[9] or a determination by the VA that his homosexuality no longer renders him ineligible,[10] the VA would still be prevented from awarding him benefits because of Section 3103. Thus, because the statute has been an absolute bar to plaintiff's receipt of benefits ever since his discharge, he has in fact been injured by the statute. I conclude that he has standing to challenge Section 3103.[11]

■■ That the plaintiff has standing, however, does not end the inquiry as to whether this Court has jurisdiction to issue a declaratory judgment in this case. The question remains whether the complaint presents an "actual controversy" within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201, that is ripe for decision.[12] The Supreme Court has recently reemphasized the test to be applied in that regard:

"The test to be applied, of course, is the familiar one stated in *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 [61 S.Ct. 510, 512, 85 L.Ed. 826] (1941): 'Basically the question in each case is whether . . . there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " *Lake Carriers' Assn. v. MacMullan,* 406 U.S. 498, 506, 92 S.Ct. 1749, 1755, 32 L.Ed.2d 257 (1972).

If there exist contingencies that must occur before an issue is actually joined by the parties, then the case will not be ripe until those contingencies occur. *See* Wright & Miller, *supra,* § 2757. In this case, in order for this Court to be in a position to afford plaintiff any meaningful relief with respect to Section 3103, and not simply issue an advisory opinion regarding that statute, the other independent ground for denying plaintiff benefits, a ground on which the VA actually relied when it denied him benefits in

---

9. Because 38 U.S.C. § 211(a) precludes federal review of the 1949 decision, *see* discussion *supra,* any determination with respect to the constitutionality of that decision would have to be sought in another forum.

10. Apparently, a discharge because of homosexual acts or tendencies is not an absolute or inevitable bar to benefits. The applicable regulation in effect in 1949 provided "An undesirable or blue discharge issued because of homosexual acts or tendencies *generally* will be considered as under dishonorable conditions and a bar to entitlement . . . ." 38 C.F.R. § 2.1064(D) (1946). (Emphasis supplied) The present version provides "A discharge or release because of one of the offenses specified in this paragraph is considered to have been issued under dishonor-

able conditions . . . (5) *Generally,* homosexual acts." 38 C.F.R. § 3.12(d)(5) (1963). (Emphasis supplied).

11. This conclusion seems particularly correct in light of the comment by leading commentators that the Supreme Court's treatment of the injury in fact requirement "has reduced it to little more than a bar against suits by intellectually or emotionally concerned bystanders." Wright & Miller, Federal Practice and Procedure: Civil, § 3531, p. 196 (1975). Plaintiff is clearly much more than a bystander with respect to Section 3103.

12. A court may raise a question of ripeness on its own motion. Wright & Miller, *supra,* § 3532, p. 241.

1949 and which is unreviewable by this Court, must be removed. Considering what plaintiff must do to circumvent that ground—he must obtain either a determination that the 1949 decision was unconstitutional or a determination by the VA that his homosexuality no longer renders his discharge "dishonorable" within the meaning of 38 U.S.C. § 101 (2)—the removal of that ground is simply too large a contingency to imbue the dispute concerning Section 3103 with sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Accordingly, I find that this suit is not ripe for decision at this time.[13]

### 3. Laches

■ Assuming further, however, that the dispute with respect to Section 3103 is ripe, and that this Court would exercise its discretion to take jurisdiction of the request for a declaratory judgment, plaintiff's suit would still have to be dismissed because of the doctrine of laches. Defendant advances this ground for dismissal vigorously, if only because of the uncontroverted long delay (more than 25 years) between the 1949 denial of benefits and the institution of this lawsuit. Nevertheless, it is axiomatic that mere delay alone, no matter how long, is insufficient to constitute laches, *Holmberg v. Armbrecht*, 327 U.S. 392, 66 S. Ct. 582, 90 L.Ed. 743 (1946), and, in addition, that the delay must be found to have been inexcusable, and the de-

fendant must be shown to have been prejudiced thereby in order for laches to be invoked. *Gruca v. United States Steel Corporation*, 495 F.2d 1252 (3d Cir. 1974). In this Circuit, the rule with respect to a party who has slept on his rights for as long as plaintiff in this case appears to have is that inexcusable delay and prejudice will be presumed, and the burden is on the plaintiff to establish that the delay was excusable and that the defendant has not been prejudiced thereby. *Burke v. Gateway Clipper, Inc.*, 441 F.2d 946 (3d Cir. 1971).

■ Applying that rule to this case, I find that plaintiff has offered no explanation for his delay in bringing this suit, and has not established that the defendant will not be prejudiced by the delay. He has had ample opportunity to make the necessary showings. Laches was the initial ground offered in support of the motion to dismiss, and since the filing of that motion, plaintiff has filed several briefs and affidavits in opposition to it. In addition, there was a hearing on the motion. In spite of these opportunities, plaintiff has failed to make the necessary showings of excuse and lack of prejudice. Accordingly, the suit must be dismissed.

In view of the above discussion, it is unnecessary to consider the defendant's contention that the complaint fails to state a claim upon which relief can be granted. In accordance with the above, the motion to dismiss will be granted.

---

13. Even assuming, *arguendo*, that the dispute with respect to Section 3103 is sufficiently ripe to confer jurisdiction on this Court, I would still, pursuant to the court's discretionary power to refuse to give declaratory relief, decline to take jurisdiction of this case. *See* Wright & Miller, Federal Practice and Procedure: Civil, § 2759. "One of the most important considerations that may induce a court to deny declaratory relief is that the judgment sought would not settle the controversy between the parties." *Id.*, p. 785. That a declaration that Section 3103 is unconstitutional would not settle the controversy between these parties is obvious. The plaintiff would still not be eligible to receive VA benefits by virtue of the 1949

decision denying him benefits, a decision that is unreviewable by this Court. Thus, practically speaking, a declaration with respect to Section 3103's constitutionality would be little more than an academic exercise.

An additional reason militating against assuming jurisdiction in this case in order to determine the constitutionality of Section 3103 is the policy of avoiding constitutional questions. See *Ashwander v. TVA*, 297 U.S. 288, 346, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). Although that policy is usually articulated with respect to the jurisdiction of the Supreme Court, it is applicable to the other federal courts as well. See *Super Tire Engineering Co. v. McCorkle*, 469 F.2d 911, 922 (3d Cir. 1972).