**DR. BECK & CO. G.M.B.H., Plaintiff,**

v.

**GENERAL ELECTRIC COMPANY, Defendant.**

United States District Court
S. D. New York.
Oct. 30, 1962.

Michael S. Striker, New York City, for plaintiff, William D. Denson, New York City, of counsel.

Rynn Berry, New York City, for defendant, H. L. Kirkpatrick, Edgar H. Kent, William W. Rymer, Boston, Mass., of counsel.

LEVET, District Judge.

Defendant moves to dismiss for lack of jurisdiction the plaintiff's action seeking a declaratory judgment of invalidity and noninfringement of defendant's patent, alleging that the jurisdictional prerequisite of an actual controversy between the parties is lacking. Alternatively, the defendant moves for summary judgment dismissing the action for lack of jurisdiction and in the exercise of this court's discretionary powers under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

The parties are competitors in the manufacture and sale of certain polyester resin compositions useful as electrical insulation. Plaintiff is a German based corporation manufacturing its composition in Germany, Italy and India and exporting it around the world under the tradename "Terebec." The defendant is a domestic corporation with a world market for its product.

Seeking to protect its composition, the defendant filed a United States patent application on December 10, 1954. As part of its program for world-wide patent protection it filed one or more patent applications corresponding to the United States application in twenty-five or more countries abroad. Several of the patents which resulted from these applications have been submitted for the court's consideration on this motion, e. g., German patent 1,033,291; French patent 1,143,-047; British patents 775,081 and 775,-082; Austrian patents 211,555 and 213,-987. From each of these it appears that at least in these instances the foreign applications were based in part on the United States application and each was given the benefit of the earlier United States filing date as is permitted under certain treaty provisions with the respective countries.

Plaintiff, when permitted in particular instances, opposed the granting of these patents. This was done in Sweden, Austria, Great Britain and Germany. In an attempt to settle the dispute engendered by the plaintiff's oppositions, the defendant, by letter of July 21, 1959, invited plaintiff to discuss the possibility of a license. This letter, signed by Mr. M. E. McIntosh, Manager of Licensing, International Company Division, General Electric Co. (hereinafter "International"), stated in pertinent part:

"In view of the mounting burden of expense and work in the numerous oppositions which you [Beck] have filed against our applications * * *, we wonder whether your company might not be interested to call a halt to the proceeding upon obtaining a license from us."

After some additional correspondence, the invitation was accepted and the matter was discussed at two New York meetings.

What occurred at these meetings is a matter much in dispute between the parties.

Originally when the motion was filed, both parties submitted numerous affidavits and exhibits in support of their respective contentions. These affidavits contained much contradictory matter and were in conflict as to whether one Mr. Behrendt, an employee of General Electric at the time of these conferences, lodged a charge of infringement against the plaintiff and his authority to do so.

Since neither party had submitted the affidavit of Mr. Behrendt, I, by memorandum dated September 27, 1962, ordered that a hearing be held at which his testimony could be taken and either party could proffer any additional testimony or exhibits in support of their contentions. See Fed.R.Civ.P. 12(d) and 43 (e).[1] The hearing was held on October 19, 1962 and both Mr. Behrendt and Mr. McIntosh testified.

After hearing the testimony there remains no issue as to the fact that Behrendt on several occasions lodged charges of infringement against the plaintiff and threatened suit if it persisted in its conduct with respect to Terebec (SM 14–15, 18, 19, 22, 56). This was not contradicted by the testimony of Mr. McIntosh, who simply stated that he did not remember such charges being made (SM 69).

 The Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, is limited by constitutional compulsion to cases of "actual controversy." Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 1937, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617. In order for an actual controversy to exist, there must be a concrete case touching the legal relations of parties having adverse legal interests and susceptible of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the alleged facts. The distinction between a case involving an actual controversy and one of a hypothetical or abstract character is necessarily one of degree. Maryland Casualty Co. v. Pacific Coal & Oil Co., 1941, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826.

 In litigation involving patents, the courts have used as their touchstone in determining the existence of an actual controversy, whether a charge of infringement has been made by the patent owner, either directly or indirectly.

As was stated by the court in Treemond Co. v. Schering Corp., 3 Cir., 1941, 122 F.2d 702, 705:

"There can be no doubt that an 'actual controversy' does not exist until the patentee makes some claim that his patent is being infringed. * * * *"

See also Technical Tape Corp. v. Minnesota Mining & Mfg. Co., 2 Cir., 1952, 200 F.2d 876; Dewey & Almy Chemical Co. v. American Anode, Inc., 3 Cir., 137 F.2d 68, cert. denied, 320 U.S. 761, 64 S.Ct. 70, 88 L.Ed. 454 (1943); Borchard, Declaratory Judgments 807–08 (2 ed. 1941). Cf. 6 Moore, Federal Practice ¶ 57.20 at 3118–21 (2 ed. 1953).

However, to find in this case that a charge of infringement was made is only to begin the analysis. What remains to be decided is first, was the charge made with respect to the United States patent, and second, was it lodged by a person with authority to make such a charge.

Equally clear from the testimony at the hearing is the fact that both Behrendt and McIntosh were without any actual authority, either expressed or implied, to license or to charge infringement of the United States patent (SM 47, 48, 51, 53, 65, 70).

To support the authority of McIntosh and Behrendt the plaintiff relies mainly upon two facts. First, it was never told by either McIntosh or Behrendt that they, and in fact the entire International Company division, were without authority with respect to the United States patent. This is confirmed by the testimony (SM 37, 38, 44, 49, 54–55, 72). Secondly, a license was specifically refused for the United States by both Behrendt and Mc-

1. The court may, in its discretion, hear and determine issues of fact as to jurisdiction by receiving oral testimony and other evidence and after weighing the evidence, enter its findings of fact and conclusions of law as to existence or nonexistence of jurisdiction. Gilbert v. David, 235 U.S. 561, 566–568, 35 S.Ct. 164, 59 L.Ed. 360 (1915); Kantor v. Comet Press Books Corp., D.C.S.D.N.Y.1960, 187 F.Supp. 321; Williams v. Minnesota Mining & Mfg. Co., D.C.S.D.Cal.1953, 14 F.R.D. 1; 6 Moore, Federal Practice ¶ 56.03 at 2028 (2 ed. 1953).

Intosh. There was testimony to this effect (SM 38) and, in addition, the plaintiff relies upon several communications which it received from McIntosh and a series of handwritten notes.

The first of these is a letter dated April 20, 1960, written by McIntosh to Dr. Schoen, vice-president of the plaintiff, in which it is stated:

"As we explained to you during our discussions in New York, we could not make an arrangement under which your vendees in France would have a license or immunity under the French patents to apply the resins to copper conductors in that country. We could, however, grant rights to your vendees of other countries to import finished wire into France for use and sale.

"There are also certain other countries where we would not wish to license our patents to you or extend rights under them through you to your vendees. These countries are the United States and Japan. We cannot speak in any way for Canada and we would suggest that any negotiations you might wish to undertake in regard to the Canadian patents should be carried on with the Canadian General Electric Company Limited, 214 King Street, West, Toronto 1, Ontario, Canada." (Exhibit Q annexed to Schoen affidavit)

The second is a cablegram of March 15, 1961 sent by McIntosh to the plaintiff stating in part:

"* * * TENTATIVELY NOW PREPARED TO GRANT YOU WORLDWIDE SELLING RIGHTS EXCEPTING JAPAN US CANADA AND MANUFACTURING RIGHTS GERMANY ENGLAND AND INDIA BUT NOT ITALY * * *"

The third is a series of handwritten notes by McIntosh taken at the first meeting with the representatives of the plaintiff on November 24, 1959 (Deft. Ex. G). These notes stated:

"Offered license at 5% with sales rights in all countries except

USA
Canada
Brazil
Australia
Argentina
South Africa
Mexico
France
& (?) Japan [sic]"

■ It remains, however, a basic proposition of the law of agency that the third party takes the risk of being misled by the unauthorized misrepresentations of the agent and that the principal is only liable where he has either authorized the representations or done something from which reasonable people would draw the inference that the agent had authority. Mechem, Agency 62 (4 ed. 1952).

Thus, here, where there is no actual authority, the facts must be examined to see whether there is any apparent authority.

■ Apparent authority results from a manifestation by a principal that another is his agent, the manifestation being made to a third person and not, as when actual authority is created, to the agent. Restatement (Second), Agency § 8, comment a (1958).

■■ Where apparent authority exists, the third person has the same rights with reference to the principal as where the agent is actually authorized (ibid). The appearance of authority must be created by the principal. While agents are often successful in creating an appearance of authority by their own acts and statements, such an appearance does not create apparent authority. Mechem, Agency 61 (4 ed. 1952). The inquiry here then becomes, what has the defendant General Electric Company done to clothe the International Company Division with the appearance of authority with respect to the United States patent.

The testimony at the hearing was somewhat confusing, although not necessarily contradictory, as to what the practice was within the labyrinth of the defendant's corporate structure regarding the licensing of foreign and domestic patents.

There appears to have been some cooperation between the International Division and the domestic groups (SM 50). When a party negotiating with the International Division also asked for a license in the United States, the International Group would execute a license for the foreign countries and refer the licensee to the appropriate domestic division for a license for the United States (SM 50, 51–52). Reciprocally, when a proposed licensee, negotiating with a domestic division, requested a license to foreign countries, they were referred to the International Division (ibid).

No license agreements were executed by the International Division for the United States or Canada (SM 32, 33, 49, 52). However, the licensing agreements which were executed by the International Division often specifically excluded the United States and Canada (SM 32, 49, 52, 53). The practice appears to have been that the International Division often conveyed to the applicant the refusal to license in the United States made by another division of the defendant. This was to save the proposed licensee a separate trip to the domestic division simply to be refused (SM 53). Additionally, there were instances where, after a license was negotiated for countries other than the United States, a license with similar terms for the United States was granted by another division of the defendant (SM 50).

McIntosh and Behrendt did not carry on negotiations regarding United States patents (SM 52). Behrendt's duties were concerned exclusively with foreign patents and patent applications. The International Division is concerned with infringement of European patents all over the world except the United States and Canada. The Division is not concerned with United States patents or patent applications (SM 32–33).

■ From this it is clear that the only fact which might support apparent authority is that the defendant permitted the International Division to specifically exclude the United States from the foreign licenses it granted. While the question is not entirely free from doubt, this fact, taken in the totality of the circumstances here, is insufficient to support apparent authority. At best, these facts might support apparent authority to license the United States patent. There is, however, no evidence whatsoever to support any apparent authority to charge infringement.

■ It can hardly be gainsaid that a claim or threat of infringement can be made only by one who has authority to make such a charge. As is evidenced here, neither Mr. Behrendt nor Mr. McIntosh had any authority to charge infringement of the United States patent. In Alamo Refining Co. v. Shell Development Co., D.C.D.Del.1949, 84 F.Supp. 325, at 329 the court held that a charge of infringement made by agents who had authority to license but no actual authority to charge infringement did not give rise to an actual controversy, stating:

"* * * unless Kellogg or Universal were given specific authority to make such threats on behalf of these defendants, there is no justiciable controversy and the complaint should be dismissed. * * *"

■ There can be no doubt that the defendant has refused to license the plaintiff under the United States patent on terms which the plaintiff finds acceptable (SM 38; letter of April 20, 1960; Cablegram of March 15, 1961; Deft. Ex. G). However, the mere refusal to license, absent a charge of infringement, does not create an actual controversy within the meaning of the Declaratory Judgment Act. Alamo Refining Co. v. Shell Development Co., D.C. D.Del.1951, 99 F.Supp. 790.

Lastly, the plaintiff seeks to premise the existence of an actual controversy on

certain events which have occurred in France and Germany.

In France, the plaintiff has been sued by Compagnie Francaise Thomson-Houston (hereinafter "CFTH") for infringement of the French patent. CFTH is defendant's licensee and present owner of the French patent although defendant has retained a right to grant sub-licenses under the patent for use and sale. CFTH was formerly associated with the defendant, but is now a completely independent company in no way subject to defendant's control or direction (Knopp affidavit p. 3).

■ In Germany, plaintiff seeks to premise the existence of a controversy over the German patent on the attempted retainer by the defendant of one Dr. Gewiese, a German attorney, to bring suit against Beck in Germany (Schoen affidavit p. 20). However, no affidavit of Dr. Gewiese has been submitted and, absent such an affidavit, the statement in Schoen's affidavit becomes inadmissible hearsay. On a motion to dismiss for lack of jurisdiction, the court may only consider evidence which would be of testimonial value at a trial. Thermo-Plastics Corp. v. International Pulverizing Corp., D.C.D.N.J.1941, 42 F.Supp. 408. Thus, this court may not consider the situation in Germany, and the critical situation is that in France.

■ Notwithstanding the fact that suit was brought in France by an independent company, the question is whether a charge of infringement of the United States patent can be implied from the bringing of suit on a foreign patent where that foreign patent is for the same invention and where the foreign patent resulted from an application which was based at least in part on the United States application and which was given the benefit of the earlier filing date in this country.

■ This is apparently a question of first impression and not without some doubt. However, it is elementary patent law that the patent is coextensive with the borders of sovereignty which granted it. Thus, the owner of a United States patent is protected against infringement only in the United States and its territories, and infringement thereof cannot be predicated on acts consummated in a foreign country. 2 Walker, Patents 1183 (Deller's Ed. 1937).

If infringement of the United States patent cannot be inferred from conduct in a foreign country, it is difficult to see how a charge of infringement of the United States patent can be implied from the bringing of suit on foreign patents, even where those foreign patents are for the same invention and the foreign patents resulted from applications which were based at least in part on the United States application and which were given the benefit of the earlier United States filing date.

The foregoing conclusion is bolstered by the fact that the patent which results in the foreign country while based on the same invention, may be different from the United States patent in several material respects. These differences result from the variations in soliciting procedures, in the interpretation of a patent and in the requisites for patentable subject matter. Certainly, a prior adjudication of a court of some foreign nation or dominion of a foreign patent would not be controlling in this country. 3 Walker, op. cit. supra at 2090. The French patent is, for the purposes of this suit, entirely different from the United States patent and the bringing of suit on the French patent does not imply a charge of infringement of the United States patent.

I find, therefore, that there was no actual controversy between the parties within the meaning of the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, at the time of the commencement of this suit.

Accordingly, defendant's motion to dismiss for lack of jurisdiction is granted

and its motion for summary judgment is denied.

The foregoing shall constitute my findings of fact and conclusions of law.

Settle order on notice in accordance with the foregoing.