**ETHICON, INC., a New Jersey corporation, Plaintiff,**

**v.**

**AMERICAN CYANAMID COMPANY, a Maine corporation, Defendant.**

**Civ. A. No. 344–73.**

United States District Court,
D. New Jersey.

Dec. 18, 1973.

---

Riker, Danzig, Scherer & Brown, Newark, N. J., by Don K. Harness Birmingham, Mich. (Michigan Bar), for plaintiff.

Robinson, Wayne & Greenberg by Donald A. Robinson, Newark, N. J., for defendant.

## OPINION AND ORDER

COOLAHAN, District Judge:

Plaintiff [1] and defendant [2] are companies doing business in pharmaceuticals and compete in the surgical suture field. Defendant holds a United States patent, No. 3,297,033, granted January 10, 1967, on absorbable surgical sutures.[3] Plaintiff has manufactured in the United States and has shipped to Great Britain plaintiff's latest model of absorbable surgical sutures. Suit in the High Court of Justice, Chancery Division, of the British courts was brought by defendant against plaintiff's sister company, Ethicon, Limited, incorporated in Great Britain,[4] for infringement of the counterpart in Great Britain (British patent No. 1,043,518) of defendant's United States patent.

Plaintiff contends that it is "at the present time expending, and will expend, substantial sums of money to create and expand facilities in the United States to enable it to manufacture its absorbable surgical sutures in commercial quantities." Defendant's British suit and the potentiality of a similar suit in the United States are viewed by plaintiff as disruptive of these manufacturing plans. Accordingly, plaintiff brings suit in this Court,[5] for a declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring defendant's United States patent void or in the alternative declaring plaintiff not to have infringed on defendant's patent and, further, enjoining defendant from bringing suit against plaintiff on a claim of patent infringement.

The Federal Declaratory Judgment Act, 28 U.S.C. § 2201, provides: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not fur-

---

1. Itself a New Jersey corporation and a wholly owned subsidiary of a New Jersey corporation, Johnson and Johnson.

2. A Maine corporation having its principal office in New Jersey.

3. As explained by Don K. Harness, counsel for plaintiff, absorbable sutures had generally in the past been made with catgut. Defendant's patent was on a new type of absorbable suture made out of a synthetic plastic material known as polyglycolic. Plaintiff plans to manufacture an absorbable suture made out of synthetic materials different from those used by defendant, but evidently similar enough to have prompted a patent infringement suit in England. (Tr. at 19.)

4. Located in Scotland and a wholly owned subsidiary of Johnson and Johnson.

5. Under 28 U.S.C. § 1338, "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . ."

ther relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

Plaintiff avers that the initiation of suit by defendant in Great Britain against plaintiff's sister corporation on a patent identical to that owned by defendant in the United States creates an alive and ample controversy and fulfills the prerequisites of the Declaratory Judgment Act. Defendant retorts that the "mere" commencement of a patent suit in a foreign country, especially when that suit is brought against a separate corporate entity from plaintiff, is not sufficient ground to present an "actual controversy." Accordingly, defendant brings the instant motion, pursuant to Rule 12(b)(1), (6) of the Federal Rules of Civil Procedure, for an order dismissing plaintiff's amended complaint.

In support of its argument that the dispute here is not sufficiently advanced to constitute a controversy, defendant cites passages from two opinions of this Circuit: " . . . [it] requires an assertion of right under the patent to place the alleged infringer in gear to join issue and challenge the title," Treemond Co. v. Schering Corporation, 122 F.2d 702, 706 (3d Cir. 1941); "there must be . . . some *concrete indication* that the defendant patentee claims the plaintiff's activity infringes his patent, and also that he will act affirmatively to enforce the protection which he claims," Japan Gas Lighter Association v. Ronson Corp., 257 F.Supp. 219, 237 (D.N.J.1966). Defendant views its bringing the British action as constituting no "assertion of right" or "concrete

indication" of a claim of patent infringement.[6] Indeed, defendant states that it may never sue on this issue. In defendant's view, declaratory judgment is possible only when the patentee has taken discernible action in locations where United States courts have jurisdiction over the potential parties in controversy. Treemond Co. v. Schering Corp., *supra*; Hook v. Hook & Ackerman, 187 F.2d 52 (3d Cir. 1951).

This Court holds, contrary to defendant's contentions, that the leading case of Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937), and its progeny Treemond Co. v. Schering Corp., *supra*,[7] and Japan Gas Lighter Ass'n v. Ronson Corp., *supra*, require a liberal interpretation of the Declaratory Judgment Act and the consequent denial of defendant's summary judgment motion. *Treemond* held that action by a patentee in which the patentee informed plaintiff's customers directly and through announcements in a trade journal that the patentee had sole right to manufacture a certain chemical gave rise to a controversy mature enough to sustain an action under the Declaratory Judgment Act. Defendant's attempt to distinguish *Treemond*, by stating that here, unlike *Treemond*, defendant "never has expressly or even impliedly claimed that plaintiff has infringed its United States patent," goes against the policies of the Declaratory Judgment Act endorsed by the *Treemond* court. That court, quoting approvingly from Borchard on Declaratory Judgments, wrote (122 F.2d at 703 n. 3):

"The [declaratory judgment] action implies a recognition of the fact that

---

6. Defendant relies in part on a case of the Ninth Circuit, Solenoid Devices, Inc. v. Ledex, Inc., 241 F.Supp. 337 (S.D.Cal.1965), aff'd, 375 F.2d 444 (9th Cir. 1967), which, though not binding on this Court, merits discussion. In *Solenoid* there was a communication from defendant to plaintiff in which defendant stated that plaintiff had infringed defendant's patent. But the communication was made within negotiations involving solely the two parties. The court found that there was a

"complete absence" of activities in which defendant may have circulated "infringement charges throughout the trade" or threatened "the manufacturer with legal action." 241 F. Supp. at 339. The instant case differs plainly in that here a legal action had commenced which effectively announced to the trade that plaintiff's sutures were under a patent cloud.

7. The *Treemond* case does not cite *Aetna Life*, but is consistent with the spirit and legal environment created by *Aetna Life*.

the social equilibrium is disturbed not merely by an overt violation of private rights, but by a challenge which places them in doubt and uncertainty.

"This has required a broadening of the conception of 'cause of action' and of the view that the judicial process is merely a means of redress for committed physical 'wrongs.' *It required an appreciation of the fact that harm is done and rights are jeopardized by mere dispute or challenge without any physical attack.* The mere existence of a cloud, the denial of a right, *the assertion of an unfounded claim,* the existence of conflicting claims, the uncertainty or insecurity occasioned by new events—these phenomena constitute operative facts, the cause for action which creates the 'right of action.' The court in rendering a judicial declaration of rights thus becomes an instrument not merely of curative but also of preventive justice."

This Court believes that there is here a sufficient doubt and uncertainty, a dark enough cloud, to satisfy this accepted policy. The suit in Britain constitutes ample notice both to plaintiff and to those with whom plaintiff does business, of an existing controversy, despite the fact that the British suit involves nominally a different company and a different patent.

Defendant argues that plaintiff has failed to meet the standards for declaratory judgment relief set out by the *Japan Gas Lighter* case.[8] As plaintiff points out, however, *Japan Gas Lighter,* like *Treemond,* stands for a liberal reading of the Declaratory Judgment Act (257 F.Supp. at 243):

"The Declaratory Judgment Act, as a remedial provision, is to be given a broad, liberal construction. *Treemond, supra,* 122 F.2d at 703; its lim-

itation to 'a case of actual controversy,' 28 U.S.C. § 2201, merely reflects the general constitutional constraint of Federal jurisdiction imposed by Article III and is not a further technical narrowing of that power. Aetna Life Ins. Co. of Hartford, Conn. v. Haworth. . . ."

In *Japan Gas Lighter,* a declaratory judgment action was sustained because of ". . . defendant patentee's expressed view of the relation between his patent and the process used by the plaintiff." 257 F.Supp. at 239–240. This Court finds that in initiating the British suit, defendant has expressed its view that plaintiff's manufacturing activities violate defendant's patent.

Defendant rests its major hope on the case of Dr. Beck & Co. v. General Electric Co., 210 F.Supp. 86 (S.D.N.Y.1962), aff'd, 317 F.2d 538 (2d Cir. 1963). On the District Court level there is language which appears to support defendant in the instant case. In *Dr. Beck,* a licensee of the patentee defendant had brought suit in France on a French patent "based in part"[9] on a patent application filed by defendant in the United States. The invention that was the subject of the French patent was identical to the invention patented in the United States. The court found that the institution of the action in France did not constitute ground sufficiently ample to sustain an action under the Declaratory Judgment Act. The court found that the French patent, though on the same invention as that of the American patent, might have a different scope from the American patent because there might be differences ". . . in soliciting procedures, in the interpretation of a patent and in the requisites for patentable subject matter." 210 F.Supp. at 92. This Court holds that despite this

8. "Such an action must be based on the plaintiff's well grounded fear that should he continue or commence the activity in question, he faces an infringement suit or the damaging threat of one to himself and his customers. The touchstone is a *reasonable apprehension.* There must be, in other words, some concrete

indication that the defendant patentee claims the plaintiff's activity infringes his patent, and also that he will act affirmatively to enforce the protection which he claims." 257 F.Supp. at 237.

9. 210 F.Supp. at 88.

language in the District Court decision in *Dr. Beck,* the circumstances of that case were not as compelling for the allowance of a declaratory judgment action as the circumstances here. In *Dr. Beck,* the corporation suing in a foreign country was the licensee of the United States patentee defendant, and was "entirely independent" of the patentee. Further, the declaratory judgment action to relieve the United States patent cloud on the activities of the *Dr. Beck* plaintiff was secondary to suit for judgment declaring defendant to have unfairly refused to license plaintiff under defendant's patents. That plaintiff's main concern in *Dr. Beck* was the procurement of licenses indicates that the *Dr. Beck* plaintiff's arrangements to manufacture the item in controversy were not as advanced or as great a cause of concern as the arrangements of plaintiff here. The instant plaintiff has done nothing to waive its challenge to defendant's patent claim.

■ In addition, the activity of the instant plaintiff giving rise to the British action included manufacturing sutures in the United States and shipping sutures from this country to Britain. Thus, plaintiff may already have violated the United States patent. In *Dr. Beck,* no American violation was indicated. The *Dr. Beck* District Court held that " . . . infringement [of United States patents] cannot be predicated on acts consummated in a foreign country. . . ." 210 F.Supp. at 92. Here, substantial acts have been consummated in the United States.

That the facts of the *Dr. Beck* case are not four-square with the facts of the instant action is indicated by the scope of the appellate decision in *Dr. Beck.* That decision was based entirely on the finding by the District Court that agents of the defendant did not have authority to make a patent infringement charge against the *Dr. Beck* plaintiff. The appellate decision reinforces the notion that the facts in *Dr. Beck* involved

fewer United States contacts than the facts in the instant case (317 F.2d at 539):

> "The insufficiency of plaintiff's proof that at the time suit was brought it had any serious plans to engage in business in the United States, or that its plans were at all altered by the charge of infringement . . . would amply support a discretionary decision to decline to take jurisdiction at this time."

The fact that the Court of Appeals found grounds independent from the portion of the District Court opinion relied on heavily by the instant defendant, and did not discuss these aspects of the District opinion, leaves this Court confident, particularly under the facts of the instant case, that *Dr. Beck* does not require a judgment for defendant here.

■ Defendant's final argument centers on the requirement that plaintiff obtain government approval of plaintiff's sutures before any controversy may be said to exist: "An actual controversy does not exist between the parties because Ethicon's ability to manufacture and sell surgical sutures is contingent upon approval by the food and drug administration." (Defendant's brief in support of its motion to dismiss at Table of Contents.) Defendant rightly avers that as a "new drug," the sutures must be approved by the Food and Drug Administration before they can be distributed.[10] Thus, in defendant's view, Ethicon's ability to use the project is, at best, hypothetical and is in any case "years away." In support of this line of argument, defendant cites cases purporting to hold that a complaint should be dismissed when a plaintiff's "ability to manufacture and sell" was found to be "contingent." Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc., 439 F.2d 871 (1st Cir. 1971); McCahill v. Borough of Fox Chapel, 438 F.2d 213 (3d Cir. 1971); Swedlow, Inc. v. Rohm & Haas Co., 455 F.2d 884 (9th Cir. 1972); Tilley Lamp Co. v. Thacker, 454

---

10. See 21 U.S.C. § 355 et seq.

F.2d 805 (5th Cir. 1972); McLarty v. Borough of Ramsey, 166 F.Supp. 291 (D.N.J.1958), aff'd, 270 F.2d 232 (3d Cir. 1959).

In *Sweetheart,* however, the declaratory judgment plaintiff was found by the court to have no certain intent to produce the controverted item. The item was being held by plaintiff in reserve, to market if plaintiff were to lose other patent actions then pending. Under such circumstances, the court could well conclude that a controversy was not sufficiently advanced to allow a declaratory judgment. In *McCahill,* the plaintiff challenged municipal zoning ordinances enacted 32 and 6 years prior to his suit; further, he had failed to exhaust administrative remedies available to achieve the same result as those for which his suit was aimed. This situation has no resemblance to the one here. In *Tilley Lamp* the attempted declaratory judgment action was founded on the *possibility* that plaintiff might be found liable in future products liability law suits regarding defendant's products. *McLarty* involved a request by plaintiff for what was in effect an advisory opinion on whether certain zoning ordinances were constitutional and could bar construction of a building by plaintiff "if and when" plaintiff would wish to commence construction. No construction was actually planned. *Swedlow* centered on an attempt to obtain a declaratory judgment barring continued construction of a certain building on the ground that construction would inevitably entail use of materials in violation of plaintiff's patents. The court observed that only the "floor and shell" of the building were in place and that it was too early to tell whether continued construction of the building might lead to interference with plaintiff's patent rights.

In the case at bar, the sutures in controversy exist. In no case cited by defendant did there exist the compelling circumstances of the instant case: actual production of a commodity and a pending legal action challenging rights to manufacture and sell that commodity.

This Court will not leave the defendant at bar in sole control of the timing of suit in this dispute.

Lastly, defendant moves this Court to limit discovery to the issues surrounding the summary judgment motion, should the Court not at this time grant its motion for summary judgment. In view of this Court's ruling against defendant on its motion for summary judgment on the present record, this particular issue need not be addressed.

It is accordingly, on this 18th day of December, 1973, ordered that defendant's motion for summary judgment is hereby dismissed.

Let counsel submit an appropriate order allowing discovery to move forward.