**HEEREMA MARINE CONTRACTORS, a corporation, et al., Plaintiffs,**

v.

**SANTA FE INTERNATIONAL CORPORATION, a corporation, Defendant.**

**No. CV 78–4654 MRP.**

United States District Court, C.D. California.

Jan. 31, 1984.

that the plaintiffs did not comply with the strict FTCA requirements.

**446**

Fulwider, Patton, Rieber, Lee & Utecht by Francis A. Utecht, Long Beach, Cal., for plaintiffs.

McCutchen, Black, Verleger & Shea, Ralph Zarefsky by Howard J. Privett, Los Angeles, Cal., for defendant.

## OPINION

PFAELZER, District Judge.

Plaintiffs instituted this action seeking, in their first claim, a declaratory judgment that United States patents held by defendant are void and that their operation of certain vessels in U.S. territorial waters would not infringe these patents. In their second claim, plaintiffs seek damages for unfair competition, based on an allegedly groundless infringement suit that defendant brought against them in Scotland, and on defendant's alleged threats to bring further suits of this type against plaintiffs and their customers.

Defendant has moved to dismiss plaintiffs' first claim on the ground that it does not present a "case or controversy" under Article III of the U.S. Constitution and that this court therefore lacks subject matter jurisdiction over the claim. Defendant has moved to dismiss plaintiffs' unfair competition claim on the ground that it does not state a claim upon which relief can be granted; alternatively, defendant seeks summary judgment on this claim.

After having read and considered the papers filed and having heard the argument of the parties, the court has concluded that plaintiffs' request for declaratory relief does not present a justiciable controversy. The court has further concluded that summary judgment must be granted in part with respect to plaintiffs' unfair competition claim, and that this claim, in remaining part, must be dismissed.

## I. BACKGROUND

Plaintiffs Heerema Marine Contractors, Napier Shipping, S.A., and Zodiac Shipping Company (collectively referred to as "Heerema") are members of the Heerema Group, an organization comprised of ap-

proximately one hundred companies located throughout the world. The Heerema Group is engaged in various aspects of the offshore oil and gas industry, including the installation of drilling platforms. Napier Shipping, S.A. and Zodiac Shipping Company, are the owners, respectively, of the two vessels, the Balder and the Hermod, which are the subject of this litigation. Heerema Marine Contractors contracts for the engineering, construction and installation of offshore oil and gas platforms and subcharters vessels owned by one Heerema enterprise to other entities within the Heerema Group.

Plaintiffs operate two semi-submersible crane vessels, the Balder and the Hermod ("Balder-type vessels"), which are used to erect offshore oil and gas platforms. These vessels, unlike conventional "ship-shape" or "barge-shape" vessels, contain two cranes, with lifting capacities of 3,000 and 2,000 tons, respectively. Their semi-submersible character provides stability in rough seas; as a consequence, these vessels have the advantage of being able to operate in more adverse environmental conditions than can conventional crane vessels. While these features distinguish Balder-type vessels from their conventional counterparts, they do so at a high price: plaintiffs' Balder-type vessels cost approximately $100 million to construct and rent at rates of up to $300,000 per day.

Defendant Santa Fe International Corporation ("Santa Fe"), a California corporation with its principal place of business in Orange, California, holds patents in the United Kingdom and the United States for semi-submersible vessels used in the drilling of oil. In November 1978, soon after the Balder was delivered, and before construction on the Hermod was completed, Santa Fe instituted a patent infringement action against plaintiffs in Scotland. The Scottish action arises out of the operation of the Balder in the North Sea, which Santa Fe contends violated its United Kingdom patents.

One month after the filing of the infringement action in Scotland, plaintiffs commenced this action. In their first claim, plaintiffs seek a declaratory judgment that Santa Fe's U.S. patents are void and unenforceable and that plaintiffs' use of a Balder-type vessel in U.S. territorial waters would not infringe Santa Fe's U.S. patents. In their second claim, plaintiffs seek damages for unfair competition, based on defendant's Scottish suit and its alleged threats to bring an infringement action against plaintiffs or their customers should they operate the Balder or Hermod in the territorial waters of a country in which defendant holds a patent.

At the time plaintiffs commenced this action in 1978, their Balder-type vessels had never entered U.S. territorial waters, nor had plaintiffs ever contracted for the use of those vessels in U.S. waters. Now, more than five years later, plaintiffs' Balder-type vessels have still never been in U.S. waters; moreover, Heerema has never bid for any work in U.S. waters for these vessels. Nevertheless, plaintiffs still continue to vigorously assert, as they have throughout this litigation, that they intend to operate their Balder-type vessels in U.S. waters. They contend that their actions manifest this intent. In their complaint, plaintiffs allege that "plaintiff has advertised in U.S. magazines and a copy of a representative advertisement is attached hereto ..." The attached advertisement, however, provides in part that "[o]ur super hammers drive your piles anywhere in the North Sea, in a matter of weeks." Plaintiffs further assert that their intent to operate a Balder-type vessel in U.S. waters is demonstrated by virtue of the fact that one of these vessels, the Hermod, was constructed according to U.S. Coast Guard specifications. However, according to a Heerema executive, by designing the Hermod to comply with Coast Guard standards, "there was maybe a minor, but definitely not a major cost increase."[1]

Bids for installing offshore platforms are placed well before the crane vessel is uti-

---

**1.** Deposition of Rudolf P. de Jong at 22 (March 5, 7, 1983).

lized at the production site. In the case of major platform installation projects, bids are submitted two to three years before the actual installation work commences. Such bids often list more than a single vessel that might perform the construction work; this procedure gives the contractor the flexibility to later determine the vessel that will be utilized. Heerema estimates that it would cost at least $50,000 to prepare a bid based on the use of a Balder-type vessel for a major project in U.S. territorial waters. They assert that they are "reluctant to spend such an amount, however, before the question of Santa Fe International Patent coverage has been answered." [2]

## II. CLAIM I: DECLARATORY RELIEF

As stated, plaintiffs' first cause of action seeks a declaration that defendant's United States patents are invalid and unenforceable and, in the alternative, that the use of plaintiffs' Balder-type vessels in American waters would not infringe these patents. Defendant has moved to dismiss this claim on the ground that it does not present a justiciable case or controversy. This court, after a bench trial which was limited to the jurisdictional issue, has concluded that plaintiffs' claim is not justiciable.

The Declaratory Judgment Act, 28 U.S.C. § 2201 [3], provides that a federal court "may declare the rights and other legal relations" of parties in "a case of actual controversy." The Act's "actual controversy" requirement is identical to the "case or controversy" requirement contained in Article III of the United States Constitution. Societe de Conditionnement en Aluminium v. Hunter Engineering Co., 655 F.2d 938, 942 (9th Cir.1981); Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 239–40,

57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937). This Constitutional requirement limits the exercise of federal judicial power to "real and substantial controvers[ies]" and prohibits a federal court from rendering an advisory opinion based "upon a hypothetical state of facts ...." Aetna Life Insurance Co. v. Haworth, 300 U.S. at 241, 57 S.Ct. at 464. While the difference between an abstract question and a justiciable controversy "is necessarily one of degree," Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941), the Supreme Court has stated that "[b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id.

In applying these principles to declaratory judgment actions involving patents, the federal courts have fashioned a two prong test to assess whether the case is an appropriate one for judicial determination.[4] First, the declaratory judgment plaintiff must have a "real and reasonable apprehension that he will be subject to liability" if he commences or continues the activity in question. Societe de Conditionnement en Aluminium v. Hunter Engineering Co., 655 F.2d at 944; see also, e.g., International Harvester Co. v. Deere & Co., 623 F.2d 1207, 1210 (7th Cir.1980). Second, "the plaintiff must have actually produced the accused article or have engaged in preparations for production such that 'but for a finding that the product infringes or for extraordinary and unforeseen contin-

---

2. Deposition of Rudolf P. de Jong at 105.

3. The Declaratory Judgment Act provides in pertinent part:

In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.
28 U.S.C. § 2201.

4. Additionally, as in all cases brought under the Declaratory Judgment Act, the case must properly invoke federal court jurisdiction. In the instant case, plaintiff's first claim presents an issue arising under the patent laws, therefore satisfying the requirements of 28 U.S.C. § 1338.

gencies, the plaintiff would and could begin production immediately.' " *International Harvester Co.*, 623 F.2d at 1210 (quoting *Sweetheart Plastics Inc. v. Illinois Tool Works, Inc.*, 439 F.2d 871, 875 (1st Cir. 1971); *accord Swedlow, Inc. v. Rohm & Haas Company*, 455 F.2d 884, 886 (9th Cir.1972) (declaratory judgment plaintiff must have the "immediate capability and intent to produce an allegedly infringing item."); *Welch v. Grindle*, 251 F.2d 671, 678 (9th Cir.1957) (declaratory judgment plaintiff must be "about to infringe or take some action which is prejudicial to the interests of the patentee").

This test serves a salutory function: by enabling a potential infringer to seek relief before actually commencing manufacture or use of the product, the declaratory judgment remedy enables him to minimize unnecessary delay and economic waste while satisfying Article III's justiciability requirement. *See, e.g., Super Products Corp. v. D P Way Corp.*, 546 F.2d 748, 754 (7th Cir.1976); *Wembley, Inc. v. Superba Cravats, Inc.*, 315 F.2d 87, 90 (2nd Cir. 1963).

### A. *Reasonable Apprehension*

■ Plaintiff has clearly satisfied the first prong of the test. As described above, defendant has brought suit against plaintiff for using their Balder-type vessels in United Kingdom waters. Moreover, Heerema need not speculate as to defendant's response should they operate a Balder-type vessel in the United States. Santa Fe has conceded that it "does not challange [sic] Heerema's declared apprehension that should the opportunity to operate its 'Balder type' vessels in U.S. waters arise prior to the expiration of Santa Fe's patents in 1988, Santa Fe will bring an infringement suit." It is difficult to imagine a stronger case supporting a plaintiff's apprehension that commencement of the contemplated activity would subject it to an infringement suit.

### B. *Immediate Intention and Ability*

A more difficult question is posed by the second prong of the test. The circumstanc-es of this case vary somewhat from those generally presented in declaratory judgment actions concerning patents, in that the potentially infringing activity is the transportation of an *existing* product into, and its subsequent operation in, the United States. Nevertheless, the same standard applies to this activity as to other activities involving allegedly imminent infringing activity. *See Enka B.V. of Arnhem, Holland v. E.I. duPont de Nemours & Co.*, 519 F.Supp. 356, 370 (D.Del.1981). Therefore, to satisfy the second prong, the plaintiffs must demonstrate that they have "the immediate intention and ability," *Wembley, Inc. v. Superba Cravats*, 315 F.2d at 90, to operate their Balder type vessels in U.S. territorial waters.

■ Although the availability of declaratory relief in patent actions, as described above, often enables a potential infringer to avoid economically wasteful activity, this remedy does not allow him to avoid *all* potentially wasteful activity. The justiciability requirement in Article III of the Constitution requires a potential infringer to engage in sufficient activity to demonstrate that an actual controversy is presented to the court. While a subsequent finding of infringement might render plaintiff's activity fruitless, that risk must be taken as a prerequisite to seeking judicial relief.

Thus, in considering whether a plaintiff has demonstrated the requisite *intent* to commit the potentially infringing activity, courts "consider the evidence of definiteness of intention as *objectively manifested* by prior preparatory steps ...." *Sweetheart Plastics, Inc.*, 439 F.2d at 875 (emphasis added). For example, in *Rengo Co. Ltd. v. Molins Machine Company, Inc.*, 657 F.2d 535, 539 (3d Cir.), *cert. denied*, 454 U.S. 1055, 102 S.Ct. 600, 70 L.Ed.2d 591 (1981), the court found that "[b]y advertising and soliciting orders, [the party seeking declaratory relief] manifested a 'definite intention' to manufacture the accused device." *See also Super Products Corp.*, 546 F.2d 748 (declaratory judgment appropriate after plaintiff had organized a busi-

ness for the purpose of building the potentially infringing device, had developed a general design, and was actively soliciting orders for it). Similarly, in *Interdynamics, Inc. v. Wolf,* 698 F.2d 157 (3d Cir.1982), the Third Circuit held an action justiciable in which the plaintiff sought a declaration that a rear window defroster did not infringe the defendant's patent. Although the plaintiff had not yet advertised or solicited orders for its proposed product, significant objective evidence of its intent existed. The plaintiff had previously marketed two different types of rear window defrosters. Each time it did so, the defendant had sued to enforce its patents. In the second suit, the plaintiff had been held in contempt of the consent order entered in the first action. In the declaratory judgment action, the plaintiff introduced affidavits which established that the company had outstanding orders for its previous product and that it intended to fill these orders within a few weeks by manufacturing a new defroster. The court found that the objective manifestations of the plaintiffs' intent—that is, the prior marketing attempts and the outstanding orders, the latter of which the court termed "significant," *id.* at 172 n. 29—coupled with the plaintiffs' articulated plans to manufacture a third version of the defroster immediately, "amply demonstrates an immediate intention to produce the [new] product." *Id.* at 169.

■ When the evidence does not unambiguously demonstrate that a plaintiff immediately intends to engage in the potentially infringing activity, however, declaratory relief is inappropriate. For example, in *Enka B.V. of Arnhem, Holland,* 519 F.Supp. 356, the plaintiff, a Dutch chemical manufacturer, sought a declaratory judgment that duPont's U.S. patent of an industrial fiber was invalid. Although the plaintiff, which produced the item in Holland, maintained an independent sales representative in the United States and alleged that it intended to continue and expand its

American commerce, the court found that "there is no evidence that [plaintiff] has the present intention [of supplying U.S. orders]. No large American orders have been accepted. Moreover, the deposition testimony indicates that Enka's principal target is the European market." *Id.* at 371. The court distinguished cases in which courts had found controversies justiciable prior to the occurrence of commercial-scale infringement as follows: "Other cases in which pre-commercial activities were held to create actual controversy all involve plaintiffs who had built prototypes and commenced testing and sales promotions in the United States [citations omitted]. In each of these cases, there was *no doubt* that production was ultimately intended for a U.S. market." (Emphasis added.) *Id.*

Plaintiffs have failed to establish their immediate intent to engage in any potentially infringing activity. Although plaintiffs assert that they seek to enter the United States' market, the facts before the court do not demonstrate that plaintiffs intend to operate their Balder-type vessels in U.S. waters in the immediate future. The advertisement in an American magazine, which plaintiffs contend manifests this intention, is by its terms not limited to activities occurring in the U.S. Moreover, deposition testimony corroborates that such advertising is not limited to any particular national market, but instead is directed to a worldwide market.[5] Similarly, the fact that plaintiffs built the Hermod to comply with U.S. Coast Guard regulations does not provide the necessary indicia of intent. As noted above, construction of the vessel in this manner resulted in, at most, a minor cost increase; it simply indicates a judgment by plaintiffs at the time the vessel was constructed that, at some point in the course of the vessel's lifetime, it *might* be used in United States waters. Therefore, the compliance with U.S. Coast Guard regulations fails to provide the immediacy

5. Deposition of Rudolf P. de Jong at 166.

and certainty of intent required to establish an actual controversy.[6]

In this case, plaintiffs are seeking to secure a declaratory judgment before incurring any costs which might prove to have been wastefully expended should this court find that the Balder-type vessels infringe defendant's U.S. patents. However, as described above, the Declaratory Judgment Act, while mitigating economic waste, does not allow a business to secure a purely advisory opinion from the court. If plaintiffs desire a declaration concerning the defendant's rights in its U.S. patents, they will have to go further in their preparation than they have to date in order to demonstrate their intention to operate a Balder-type vessel in U.S. waters.

Plaintiffs' showing that a justiciable controversy exists is deficient for an additional reason. They have not demonstrated that they possess the present *ability* to commit the infringing activity. Where conditions precedent to the potentially infringing activity render its occurrence sufficiently contingent, courts decline to find that an actual controversy has been presented. *See Kiser v. Johnson*, 404 F.Supp. 879, 886 (M.D.Pa.1975) ("If there exist contingencies that must occur before an issue is actually joined by the parties, then the case will not be ripe until those contingencies occur"). *Cf. International Harvester Co.*, 623 F.2d at 1210 (quoting *Sweetheart Plastics, Inc.*, 439 F.2d at 875).[7] For example, in *Swedlow, Inc. v. Rohm & Haas Co.*, 455 F.2d 884 (9th Cir.1972), a holder of a patent sought a declaratory judgment that a plant being built by the defendant would employ the inventions claimed in plaintiff's patents and infringe them when placed into operation. The Ninth Circuit, noting that the "defendant's plant has progressed only to the stage where the floor and shell of the building are in place," concluded that "[a]llowing the plaintiff to maintain this action ... is too remote and unduly speculative." *Id.* at 886.[8]

In this case, plaintiff is still several steps removed from the potentially infringing activity. Before plaintiffs' Balder-type vessels could commence operations in U.S. waters, an oil company would have to invite bids to install offshore production facilities, plaintiffs would have to submit a bid, the bid would have to be accepted, and, if the bid included more than one type of vessel, the plaintiffs would have to decide to commit a Balder-type vessel to perform the work. Moreover, for such operations to raise the possibility of infringement, the actual use of plaintiffs' Balder-type vessels must commence prior to November 1988,

6. In order for this court to have jurisdiction over plaintiffs' request for declaratory relief, an actual controversy must have existed at the time the complaint was filed. *See, e.g., Super Products Corp.*, 546 F.2d at 752. However, later events may be considered in ascertaining the plaintiffs' intent at the time they filed this action. While the facts in existence as of December 1978, when plaintiffs filed this action, have convinced the court that plaintiffs lacked the requisite intent to satisfy the second prong of the justiciability test, plaintiffs' failure to take any steps towards operating a Balder-type vessel in U.S. waters in the four and one-half years following the commencement of this litigation reinforces the court's conclusion in this regard.

7. *Ethicon, Inc. v. American Cyanamid Co.*, 369 F.Supp. 934 (D.N.J.1973) is not to the contrary. In *Ethicon,* the plaintiff sought a declaration that sutures it planned to manufacture in commercial quantities did not infringe defendant's patents. The defendant argued that since the Food and Drug Administration was required to approve the sutures before they could be distrib-

uted, and since such approval was contingent, the controversy was hypothetical. However, the plaintiff had actually produced sutures in the United States and shipped them to Britain, and therefore may already have violated the U.S. patent. *Id.* at 938. Given these "compelling circumstances," *id.* at 939, the court held the case justiciable. *Ethicon,* therefore, does not conflict with the general proposition that the presence of contingencies renders a case hypothetical.

Of course, as long as the declaratory judgment remedy is available to those who have not yet commenced the questionable activity, events might transpire which would render a declaration nugatory. By limiting this situation to "extraordinary and unforeseen contingencies," the *Sweetheart Plastics* test reduces the possibility of such an occurrence to a minimum.

8. The court's holding again demonstrates that a party must sometimes engage in potentially wasteful activity to prove the existence of an actual controversy.

when the defendant's U.S. patents expire. At this stage, therefore, plaintiffs' ability to infringe is too speculative to render their request for declaratory relief justiciable.[9]

## III.  CLAIM II: UNFAIR COMPETITION

In their second cause of action,[10] plaintiffs advance two independent theories in support of their claim of unfair competition. Plaintiffs first allege that defendant instituted the Scottish action despite the fact that it knew that plaintiffs' operation of their Balder-type vessels in the North Sea did not infringe defendant's United Kingdom patent. They allege that defendant brought the Scottish action in order to dissuade plaintiffs from competing with it in, among other places, United States and Scottish waters. They further allege that the Scottish proceedings have forced them to expend considerable sums on litigation expenses and caused them to divert their personnel from profit-making endeavors. As part of their first theory, they also contend that, despite the invalidity of its U.S. patent, defendant has threatened to institute additional patent infringement actions against plaintiffs should they operate their Balder-type vessels in U.S. waters or in the waters of any other country in which defendant has obtained a patent. These threats, plaintiffs assert, deter them from entering the U.S. market. The second theory is based on the defendant's alleged threats of litigation against plaintiffs' potential customers, which serves to deprive plaintiffs of profitable business opportunities. As discussed below, under plaintiffs' first theory, their claim is premature and under the second theory, their claim is rebutted by the record.

■ With respect to the first theory, plaintiffs contend that the defendant's prosecution of the Scottish litigation and the threat of commencing future litigation against them constitutes unfair competition under California law. In certain instances, instituting vexatious litigation can constitute unfair competition. In *Barquis v. Merchants Collection Association of Oakland, Inc.*, 7 Cal.3d 94, 101 Cal.Rptr. 745, 496 P.2d 817 (1972), the plaintiffs alleged that the defendant, a collection agency, had *willfully* commenced actions in improper counties with the knowledge that such courts were improper, and for the ultimate purpose of securing undeserved default judgments and exacting inequitable settlements. The California Supreme Court held that, "inasmuch as the alleged repeated violation of statutory requirements has been adopted as a *'pattern'* or *'practice'* *of conduct* by a collection agency, for whom the filing of litigation is a primary part of its business activity, this 'pattern' of misfiling complaints amounts to an 'unlawful ... business practice' ... under Section 3369 of the Civil Code." *Id.* at 755,

9. As noted above, an alternative version of the "immediate ability" requirement is that a justiciable controversy is presented only when the "plaintiff's preparations for production ... have proceeded to the point at which any further action might prejudice the interests of the patentee." *International Harvester Co.*, 623 F.2d at 1217. However, were plaintiffs to take the next possible step towards operating a Balder-type vessel in U.S. waters—submitting a bid for a project using a Balder-type vessel—they would simply reduce by one the number of contingencies that must precede the ultimate use of those vessels in U.S. waters. In the opinion of this court, this would not sufficiently prejudice the defendant's interests to meet the alternative version of the test.

10. Since the court has held that plaintiffs' first claim is not justiciable, an independent basis must exist to vest jurisdiction in this court over the plaintiffs' second claim. This basis is provided by the court's diversity jurisdiction, 28 U.S.C. § 1332. The parties have stipulated that the following facts are true and should be deemed incorporated into the complaint: plaintiff Heerema Marine Contractors is a corporation of Switzerland with its principal place of business in Switzerland; plaintiff Napier Shipping, S.A. is a corporation of Panama, with its principal place of business in The Hague, Holland; and plaintiff Zodiac Shipping Company is a corporation of Panama with its principal place of business in Panama. As noted above, the complaint alleges that defendant Santa Fe International Corporation is a corporation of California with its principal place of business in Orange, California.

496 P.2d at 827 (emphasis added).[11] Similarly, in *Plastic Contact Lens Company v. Butterfield*, 366 F.2d 338, 346 (9th Cir. 1966), *cert. denied*, 385 U.S. 1009, 87 S.Ct. 717, 17 L.Ed.2d 547 (1967), the Ninth Circuit, in dictum, recognized "that a *series of lawsuits*, wrongfully instituted for oppressive purposes, may constitute the basis for a just charge of unfair competitive activity." (Emphasis added.) In the instant case, plaintiffs seek to maintain an action for unfair competition on the ground that a single lawsuit has been filed improperly against them. As each of the above cited cases emphasizes, this allegation is insufficient to state an unfair competition claim.

Precluding a plaintiff from seeking relief when only a single suit has been filed does not immunize a party who either institutes a suit for improper purposes or threatens to bring a suit against a competitor in an attempt to dissuade the competitor from entering a market or markets. If a suit is brought in bad faith, the defendant can bring an action for malicious prosecution. However, one element of a malicious prosecution action is that the prior litigation have terminated in the current plaintiff's

favor. *Bertero v. National General Corp.*, 13 Cal.3d 43, 50, 118 Cal.Rptr. 184, 189, 529 P.2d 608, 613 (1974). Thus, in the instant action, since the Scottish action is still pending, a malicious prosecution action by plaintiffs is premature. Similarly, one who is deterred from engaging in certain business activities due to threats of litigation is not without a legal remedy: he may seek a declaratory judgment that his contemplated behavior is privileged. In the instant case, plaintiffs have sought such a declaration; however, as discussed in Part II above, such an action is also premature because the actions which might subject plaintiffs to liability are too remote and speculative.

Plaintiffs are attempting to use the unfair competition claim to obtain immediate relief when an action for malicious prosecution or for a declaratory judgment would be premature. The tort of unfair competition was not intended to serve this function. Plaintiffs' allegation that they were directly damaged by the defendant's action does not transform this claim into one upon which relief can be granted.[12]

---

**11.** At that time, Calif.Civ.Code § 3369 provided, in relevant part: "Any person performing or proposing to perform an act of unfair competition within this state may be enjoined in any court of competent jurisdiction ... As used in this section, unfair competition shall mean and include unlawful, unfair or fraudulent business practice ..." These provisions, with minor modifications, are now contained in Calif. Business and Professions Code §§ 17200, 17203.

**12.** It is likely that dismissal of plaintiffs' unfair competition claim, to the extent that it is based on events in Scotland, is appropriate under the doctrine of *forum non conveniens* as well. However, as discussed below, in its current state, the record is inadequate to warrant dismissal on this ground. Since the court has held that plaintiffs' second claim cannot withstand defendant's motion, the court does not deem it necessary to request the additional documentation needed to support dismissal on *forum non conveniens* grounds.
Under the doctrine of *forum non conveniens*, federal courts possess the inherent power to refuse jurisdiction over cases which should have been brought in a foreign jurisdiction. *See Paper Operations Consultants International, Ltd. v. SS Hong Kong Amber*, 513 F.2d 667, 670 (9th Cir.1975). In *Gulf Oil Corp. v. Gilbert*, 330 U.S.

501, 508–509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947), the Supreme Court provided a list of "public interest factors" affecting the convenience of the forum and "private interest factors" affecting the convenience of the litigants to guide the trial court's decision of whether, in the exercise of its discretion, it should dismiss the case.
While the balance of convenience in this action appears to favor the defendant, dismissal of the plaintiffs' unfair competition claim need not be based on that ground alone. The unfair competition claim, which calls upon this court to evaluate the validity of defendant's United Kingdom patents, raises comity considerations that render the current forum particularly inappropriate. *See Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633 (2nd Cir.1956).
Nevertheless, dismissal on *forum non conveniens* grounds is not appropriate on the current record. The existence of an adequate alternative forum is a prerequisite for invocation of the doctrine, *see Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 265 n. 22, 70 L.Ed.2d 419 (1981), and the defendant bears the burden of proof on this issue. *See Cheng v. Boeing Co.*, 708 F.2d 1406, 1411 (9th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 549, 78 L.Ed.2d 723 (1983). Defendant has introduced no evidence demonstrating the suitability of an alter-

■ As stated above, plaintiffs' complaint advances a second theory of unfair competition. It is based on allegations that defendant threatened to sue plaintiffs' potential customers for infringement should the customers utilize the services of a Balder-type vessel. While threats of this nature may constitute tortious activity under some circumstances, *see Masoni v. Board of Trade of San Francisco*, 119 Cal.App.2d 738, 741, 260 P.2d 205, 207 (1953), the record contains no evidence suggesting that such threats were made. Plaintiffs have conceded that they have no evidence indicating that defendant threatened plaintiffs' customers with an infringement suit.[13] Defendant, on the other hand, has introduced declarations from two of its key employees involved in marketing and business development on this issue.[14] Each asserts that he has not issued any such threats, has never heard that any such threats were made, and believes that such a practice would not have constituted a sensible business practice. Given that plaintiffs have presented nothing beyond a bare assertion in support of their contentions, defendant is entitled to summary judgment with respect to plaintiffs' second theory of unfair competition.[15]

## IV. AMENDED COMPLAINT

■ Almost four and a half years after the original complaint was filed, and *after* defendant had filed its motions for summary judgment, plaintiffs moved for leave to file an amended complaint. Under Fed.R. Civ.P. 15(a), leave to amend "shall be freely given when justice so requires." Criteria used to determine the propriety of a motion for leave to amend include undue delay, bad faith, futility of amendment, and the resulting prejudice to the opposing party.

*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Although plaintiffs' long delay in filing this motion might not, in itself, provide a sufficient basis for denying plaintiffs' request, *see Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir.1973), in light of the additional factors described below, denial of plaintiffs' motion is appropriate.

Plaintiffs not only delayed years before moving to amend their complaint, but also waited to do so until the defendant's motion for summary judgment was pending before this court. Delaying an amendment until a possible adverse judgment is imminent is an additional factor weighing against a court's granting of a motion to amend. *See, e.g., M/V American Queen v. San Diego Marine Construction Corp.*, 708 F.2d 1483, 1492 (9th Cir.1983); *Glesenkamp v. Nationwide Mutual Insurance Co.*, 71 F.R.D. 1 (N.D.Cal.1974), *aff'd per curiam*, 540 F.2d 458 (9th Cir.1976).

Most importantly, allowing plaintiffs to amend their complaint would prove a futile gesture. The amendments to the first cause of action do not alter the fact that the plaintiffs' request for a declaratory judgment fails to present a justiciable controversy. As described in Section II, *supra*, plaintiffs have failed to demonstrate that they possess the immediate intention and ability to commit the potentially infringing action. The amended first cause of action, which simply sets out in greater specificity the allegations contained in the original complaint, would not enable plaintiffs to overcome this obstacle to jurisdiction.

Similarly, the proposed amendments to the second cause of action fail to strength-

---

native forum. While the probability that such a forum exists is high, the court is not prepared, on the current state of the record, to hold that the defendant has satisfied its burden.

**13.** *See* Plaintiffs' Responses to Defendant's Request for Admissions and Interrogatories at 2–3. (February 10, 1983).

**14.** Declaration of B.J. Warren, President, Santa Fe Offshore Construction Company (February

15, 1983); Declaration of Lester H. Arbo, Area Manager and Vice-President for Offshore Construction of Santa Fe Offshore Construction Co. (February 14, 1983).

**15.** Plaintiffs' amended complaint does not allege that defendant threatened its customers and relies solely on the original complaint's first theory of unfair competition.

en plaintiffs' case. Plaintiffs propose to revise this cause of action in two respects. First, the proposed amended complaint asserts that defendant has "clearly and definitely" threatened to bring an infringement action against plaintiffs should they operate their Balder-type vessels in U.S. waters. This alteration, which simply adds adjectives to plaintiffs' original complaint, provides no basis for avoiding dismissal. Second, the amended second cause of action alleges, for the first time, that plaintiffs' British patent is invalid because it is based on a fraudulently obtained U.S. patent, and that, therefore, the defendant's acts of obtaining the United Kingdom patent and instituting the Scottish litigation constitute unfair competition in violation of the International Convention for the Protection of Industrial Property ("Paris Convention"). However, the Paris Convention does not create "private rights under American law for acts of unfair competition occurring in foreign countries." *Vanity Fair Mills*, 234 F.2d at 640; *see also Kemart Corporation v. Printing Arts Research Laboratories, Inc.*, 269 F.2d 375, 389 (9th Cir.), *cert. denied*, 361 U.S. 893, 80 S.Ct. 197, 4 L.Ed.2d 151 (1959) ("the Paris Convention was not intended to define the substantive law in the area of 'unfair competition' of the signatory countries, but rather to set out the broad basic principles under which the laws of the said countries would operate"); *Ortman v. Stanray Corp.*, 371 F.2d 154, 156–57 (7th Cir.1967); *Mannington Mills, Inc. v. Congoleum Corporation*, 595 F.2d 1287, 1298–99 (3d Cir.1979). Therefore, as with the other proposed revisions, this amendment would be futile.

For the reasons set forth above,

IT IS ORDERED:

1. that plaintiffs' claim under which they seek a declaratory judgment is dismissed for failure to present a "case or controversy";

2. that plaintiffs' unfair competition claim, insofar as it is based on the defendant's prosecution of the infringement action against plaintiffs in Scotland and the defendant's alleged threats to institute further such actions against plaintiffs, is dismissed for failure to state a claim upon which relief can be granted; and

3. that defendant's motion for summary judgment is granted with respect to that portion of plaintiffs' unfair competition claim which is based on the allegation that defendant has threatened plaintiffs' potential customers with infringement suits.